In the Matter of the Application of GEORGE C. TASH for an Allowance Out of the Surplus Income of the Estate of IDA A. FLAGLER, an Incompetent.

Supreme Court, New York County, March 20, 1926.

**Insane persons — application for payment to petitioner of $1,500 annually out of surplus income of estate of incompetent second cousin — annual unexpended surplus of $250,000 exists in $11,000,000 estate of incompetent — evidence shows incompetent would have aided petitioner were she living and able to manage her affairs — application granted.**

Petitioner, a second cousin of an incompetent, from whose estate of $11,000,000 an annual unexpended surplus of approximately $250,000 is earned, is entitled to an allowance of $1,500 annually out of said surplus, where the evidence shows that were the incompetent alive and able to manage her own affairs, she would have been inclined to aid the petitioner, and where it appears that by reason of the advanced age of the incompetent, her incurable illness and the absence of a last will, no allowance can possibly be construed as a depletion of her substance or interference with the right to dispose of her property according to a well-considered scheme of benefaction which the incompetent might have wished to adopt in the disposition of her estate, and that, although there is opposition by the committee of the property to the granting of the allowance, the next of kin are neutral in the matter.

APPLICATION to confirm the report of the referee allowing the sum of $1,500 per annum to the petitioner out of the surplus income of the estate of the incompetent.

*Emmanuel Lewin,* for the petitioner.

*Agar, Ely & Fulton* [*Alfred Ely* and *Charles S. Ernst* of counsel], for the heirs and next of kin.

*Delancey Nicoll* [*Gerald Donovan* of counsel], for the committee of the property.

LEVY, J. The applicant, George C. Tash, a second cousin of the incompetent, is a man of seventy, in poor health and compelled to eke out an existence by working thirteen hours a day, including Sunday, as a cashier in a smoke-shop at Red Bank, N. J. He will probably lose his position on April first next, when he will doubtless be without any source of income. His situation is indeed such as would appeal to the compassion of the incompetent if the applica-

tion could be addressed to her. The question, however, remains whether she would be impelled, if in her sound mind, to grant any aid under the circumstances.

The estate is vast, consisting of $11,000,000 and over, a large part of which is the result of accumulation of unexpended income. With all the luxury in which the incompetent is maintained, there is an annual unexpended surplus of approximately $250,000. Taking into consideration every conceivable disbursement for her maintenance in her proper station of life, the full surplus cannot possibly be spent for her personal needs. The committee of the property has opposed this application, while the next of kin, who are the ultimate beneficiaries of the estate, have adopted an attitude of neutrality. The power of this court to grant the petition in a proper case is undoubted, and the only question is whether the court is warranted in allowing it in this particular situation.

The supreme test in applications of this nature is the probable course of conduct of the incompetent in the matter, if she were able to manage her own affairs. It is on this ground that the allowance of a retiring pension to an aged personal servant of one insane in *Matter of Earl of Carysfort* (Craig & Phil. Ch. 76) can be justified. This must also be the basis of the grant of a contribution to the building of a church and school, out of the estate of Strickland, a person of unsound mind. (*Matter of Strickland*, L. R. 6 Ch. App. 226.) Since the incompetent cannot be consulted as to her wishes in the premises, these necessarily must be gathered from collateral circumstances. While the distress of the applicant and his relationship are proper elements to be considered, of themselves, they are not sufficient. There must be something additional from which the probable disposition of the incompetent to make the allowance can be inferred. From a reading of the evidence, I am convinced that there are such special circumstances present here as would be persuasive upon the incompetent in her sound faculties and incline her to listen to this petitioner with a sympathetic ear. While it is true that she did not know him and never extended any aid to him, nevertheless she had cause to be deeply indebted to his grandparents, from whom she and her mother received assistance and sympathy at a time when they themselves were poor and needy. This, I believe, was the determining circumstance in the grant of allowances to Mrs. Cox and Mrs. Moore, respectively, first cousins of the incompetent and aunts of this petitioner. Besides, the incompetent, when well, was known as a person of charitable disposition and inclined to assist poor relatives and even those whom she had never met.

The neutral position in the matter on the part of the next of

Supreme Court, March, 1926.      [Vol. 126

kin is of considerably more weight with the court than the opposition of the committee of the property. I could well understand the latter's attitude if the depletion of the income were to endanger or even impair the means of maintenance of the incompetent, but, as has already been pointed out, such hazard is absolutely foreclosed. The courts have been loath to grant allowances except in a proper case, because of their disinclination to spend the incompetent's funds without his consent. The reason for such reluctance, even where there is an abundant surplus, is that such expenditures · may interfere with any well-considered scheme of benefaction which the incompetent might wish to adopt in the disposition of his estate. But for practical purposes, here, by reason of her advanced age, her incurable illness and the absence of a last will, no allowance in this case could possibly be construed as a depletion of her substance or an interference with her right to dispose of her property according to such a plan. The opposition of the committee, if based upon the well-known objection of the courts to spend the incompetent's money without the strongest reasons, must, therefore, be regarded as highly theoretical. This, indeed, is not to be deemed gratuitous criticism of the attitude of the committee in defending what it considers the best interests of the incompetent. On the other hand, it is significant that the position of the next of kin whose interests alone can be adversely affected by this allowance, slight even though it may be, indicates an unselfish desire not to impede any lawful benefit which the court might confer upon one unfortunately situated and connected with them by ties of consanguinity.·

Therefore, I consider that the grant of this allowance is not only in probable accord with the sound wishes of the incompetent if she could express them, but will be wisely directed and become one of the monuments to her memory. In arriving at this conclusion I consider it of some moment that the referee, Mr. Maurice Bloch, who reported in favor of this allowance and who also acted in the same capacity in the recent Cox application, was able to weigh the relative merits of the present petition with the earlier one upon which he likewise favorably reported. His recommendation must be deemed the result of careful and mature deliberation based upon somewhat unusual opportunities for deduction.

The attorney for the petitioner has doubtless made original investigations and expended arduous labor extending over a period of six months and is fully entitled to an allowance commensurate with his successful efforts, and to his disbursements. Question has arisen as to one of the items in the stenographer's bill to which the committee has properly objected and this will be reduced

from $340 to $240 by consent of the committee. The expenses of the next of kin and of the committee will be allowed. Hearings have been protracted over a long period and the labor involved and the record made has been substantially larger than in the Moore and Cox cases. The allowance of the attorney for the petitioner and that of the referee and special guardian will be fixed in the order to be settled hereon.

The report of the referee is confirmed and the grant to the petitioner will date from the day fixed in accordance with the recommendation in the report. Settle order.