In the Matter of GESUE CALASANTRA, an Incompetent.

County Court, Chautauqua County, February 18, 1935.

*Rogerson, Clary & Hewes* [*Howard Peterson* of counsel], for the petitioner, Teresa Calasantra Marucci.

OTTAWAY, J. Gesue Calasantra is an incompetent at present domiciled at the Veterans Administration Facility at Canandaigua, N. Y. Those in charge certify that his condition is permanent and that he will not recover but will remain incurably insane. He is a shell shocked war veteran and is being cared for in the government hospital without expense to his estate. The National Chautauqua County Bank was appointed some years ago as committee to look after his financial interests.

Gesue Calasantra came to America in the year 1914 and in addition to his own small savings during the two or three years that he lived in this country he has, since the casualty in the World War, received large sums from our government because of his injuries. At present he receives each month $15 government pension and $57.50 as government insurance payments, which gives him a total annual income of almost $1,000. The expense of his maintenance and care per year, including all the small expenses which might render him more comfortable, is less than $100. The result is that a large estate has been accumulated in the hands of the committee. It amounts at the present time to upwards of $34,000. This estate is, of course, bearing a substantial income which with the government payments above mentioned adds to the principal in an ever-accelerating amount.

The incompetent has never married. His nearest relative is his mother, Filomena Intorcia Calasantra, who lives in Benevento, Italy. He has brothers and sisters also in Italy and one sister,

Teresa Calasantra Marucci, the petitioner, who resides in this country. Teresa Marucci, the petitioner, is married and has eight children ranging in age from one to eighteen years. She, as the petitioner, seeks an order requiring the committee of the incompetent to pay monthly from the estate of the incompetent a sum which will be sufficient for her support and the support of her family.

The petition is not opposed by the committee of the incompetent. It has the acquiescence or support of that committee; of the American Red Cross of this city who are interested in this family and have been aiding them; of the Veterans Bureau of the United States government, and of the local American Legion. The consent (in general terms) of the mother, Filomena Calasantra, is also presented. In short, no one opposes the application. The fact, however, that there is no opposition does not give the right to this order which can only be granted in case a definite right to invade the estate of the incompetent person is shown. Courts have a rigid duty to conserve the estates of infants and incompetents who may not protect themselves from encroachments. From the papers presented and the evidence taken the following facts appear: Gesue Calasantra came to this country in 1914. His sister, Teresa Marucci, and her husband came in 1915. They lived together. When he worked he contributed to the household fifteen dollars per month. His sister took charge of his pay envelopes during a considerable period and helped him saving or spending, as the case might be. When he was out of work his sister gave him spending money. When he entered the army he offered to have his pay check made payable to his sister, but she was not in immediate need and thought that their mother in Italy should have it.

The principle of law invoked in this application involves the question whether the incompetent would in all probability make these payments for the support of his sister and her family if he were sane.

If Gesue Calasantra today could decide upon the disposition of the income of his substantial estate, moral or charitable considerations would dictate his decision only to the extent that he felt their force. His comparative affluence might impel him to relieve the distress of his sister's family. The law would not compel him to do so if he decided otherwise. The power of the court to dispose of that income may not be arbitrarily exercised. The court may not be moved by its own generous impulses in the disposition of the income of the incompetent. In reaching decision it may give to moral and charitable considerations only such weight

as it finds that the incompetent himself would have given them. (See *Matter of Flagler*, 126 Misc. 764; *Matter of Meyer*, 140 id. 1; *Matter of Flagler*, 131 id. 430; *Matter of Lord*, 227 N. Y. 145; *Matter of Flagler*, 249 id. 415.)

The doctrine of law is then well established that allowances of the kind asked will be permitted only where it satisfactorily appears that the lunatic would in all probability have made such payments if he had been of sound mind. We resolve that question of fact in this case in favor of the petitioner. Having in mind the relations of the incompetent to this petitioner and her family, his previous status as a member of that family, the community of interests which obtained as to his income, his offer on the eve of war to have his pay check sent to petitioner, his present substantial estate compared with her situation of dire need, the consent of his mother who is the heir most interested and the acquiescence of all those officials and organizations who are interested in the incompetent's welfare, we conclude that Gesue Calasantra would have spent part of his income in aiding his sister and her family.

Order may be presented in appropriate terms directing the payment of twenty dollars per month.