OPINION OF THE COURT
C. Raymond Radigan, J.
By these proceedings the conservator of the property of Margaret M. Florence seeks authorization to make taxable gifts to family members consistent with the conservatee’s testamentary plan. Because of the need to expedite this peti *394 tion, the court granted the relief sought on the record at the end of the hearing but indicated it would write a decision explaining its reasons.
The facts, briefly stated, are as follows. The conservatee, Margaret M. Florence, a widow of advanced age, is currently unable to administer her property due to her physical condition. She remains in a comatose condition occasioned by her May 17, 1988 heart attack. Reports of her physician indicate that her condition is not expected to change in the foreseeable future and the testimony indicates death may be imminent. Due to her condition and property interests, a conservator was appointed on June 2, 1988. Mrs. Florence owns real and personal property including a home, stocks, bonds and the right to receive approximately $24,000 a year from a testamentary trust under the will of her late husband. The value of her property interests total nearly $1.8 million.
Generally, " 'Neither a general guardian nor a court has the power to dispose of a ward’s property by way of gift.’ ” (Estate of Christiansen, 248 Cal App 2d 398, 407, 56 Cal Rptr 505, 511.) However, such transfer may be validated by exercise of the judicial doctrine of "Substituted Judgment” provided: (1) the conservatee does not require the funds for maintenance and support, and (2) the conservatee would be likely to make such a transfer, if capable of doing so.
Of primary concern is that the assets left with the conservator be adequate to care for, maintain and support Mrs. Florence for the remainder of her life. The court has heard evidence on this issue and is satisfied that if the gifts are made, the conservatee will still possess property, and continue to receive income through a testamentary trust in amounts clearly sufficient to provide for any future need.
The courts have followed a policy of sanctioning inter vivos gifts, made in the interest of over-all tax savings, where shown to be in harmony with an incompetent’s desire (Estate of Christiansen, supra; Matter of duPont, 41 Del Ch 300, 194 A2d 309; Matter of Myles, 57 Misc 2d 101). Such tax-saving transfers are favored in that ultimately the transfer effectuates both the ward’s intent and benefits the ward’s estate by minimizing estate tax liability (Matter of Carson, 39 Misc 2d 544).
A review of the current record suggests that Mrs. Florence was highly concerned with tax savings. Her strategy evidences an intent to minimize estate tax repercussions through gift *395 giving. In the past she had made gifts to her children utilizing the $10,000 annual exclusion, valuation freezes and incurred gift tax obligations during her life. Each of the foregoing represent estate planning techniques. Additionally, these actions indicate that she had sought out and followed the advice of her estate planners. Her desire to minimize tax liability appears to be without question.
The recipients of the proposed gifts are the same individuals who would receive distribution under the will of Mrs. Florence and her distributees have consented to the proposed plan of present gift giving. It is thus seen that these gifts would follow the conservatee’s intent and merely affect the timing of enjoyment, not the ultimate beneficiaries thereof.
The rule determining whether such gifts should be authorized questions whether the conservatee would have so acted but for the disability. In the area of substituted judgment two standards have arisen. One standard is objective, the other subjective. In a majority of tax cases, the objective standard has proven controlling (Matter of Carson, supra; Matter of Myles, supra; Matter of duPont, supra; Estate of Christiansen, supra; cf., Matter of Kenan, 262 NC 627, 138 SE2d 547), however, the subjective test is more applicable to cases relating to "transfers for need” (Matter of Flemming, 173 Misc 851; Matter of Calasantra, 154 Misc 493; Matter of Salz, 80 AD2d 769; cf., Matter of Schley, 201 Misc 522) than to tax-purpose transfers. The facts herein meet the scrutiny of either standard.
Under the objective test, authorization to make gifts is extended where the ward as a reasonably prudent person would so act, "there being no substantial evidence of a contrary intent” (Estate of Christiansen, supra, 248 Cal App 2d, at 424, 56 Cal Rptr, at 522-523). In the present case, it may be concluded that the conservatee as a reasonably prudent person would wish to limit the expenditure of estate taxes. Additionally, the record is void of evidence that the conservatee was hostile to such tax planning; to the contrary, the record speaks of the ward’s tax-saving intent.
The subjective standard, though here met, presents a difficult test. The difficulty arises out of the requisite review of past actions to uncover an intent that would support the transfer. It must be shown that the ward would actually have made the transfer himself, if the capacity existed (Matter of Kenan, supra). Thus, Mrs. Florence’s past tax-planning con *396 duct in concert with her activities up to the time of her infirmity leads to adequate precedent to infer that she would have so planned her estate.
Petitioner requests authorization to make gifts in the amount of $1.1 million to accomplish tax savings. Only high basis assets will be gifted. Low basis assets will remain in the estate subject to estate taxation and basis step-up (26 USC § 1014). It is anticipated that the proposed gifts will generate tax savings of $85,000 or more. The request is reasonable if the benefit to the estate and to the beneficiaries of the conservatee’s will are significant. The way in which such benefits arise is through the gifting of a significant portion of the estate. This reduces the gross estate for estate tax purposes. Current estate and gift tax laws utilize a unified tax rate structure, therefore no tax savings are realized merely on the granting of such gifts.
The benefits to be realized are twofold. First, the remaining funds in the conservatorship estate are used to pay the gift tax, thus further reducing the size of the gross estate for estate tax purposes. Second, valuation of the gift is made and such value is frozen. This in turn reduces the size of the taxable estate in that subsequent appreciation in the value of the gifted property is not taxed to the estate. Although the benefit of a valuation freeze is permanent, the benefit from paying taxes during the conservatee’s life may be lost if the ward were to die within three years of the date of the gift (26 USC § 2035). Under such circumstances, the gift taxes paid will be added back to the estate, effectively mitigating any tax savings. Accordingly, it is possible that the gifts will not result in the benefit sought. The court will make no determination on the merits of a "for tax benefit” transfer based on life expectancy or actuarial data. The mere possibility that the tax benefit will not inure does not of itself reduce the import through which such decision is made.
Upon the foregoing, this court is satisfied, as to the form and value of such assets remaining with the conservator, and that ample surplus will remain to care for, maintain and support the conservatee for the remainder of her life. Further, this court is convinced that the proposed gifts would effectuate a tax-saving strategy consistent with the ascertainable desires of Mrs. Florence and her intent to maximize the benefits of her estate.