# In the Matter of BRENNAN C. DALY, an Infant, by KATHLEEN M. DALY and Another, as Guardians.

Surrogate's Court, Nassau County, December 23, 1988

## APPEARANCES OF COUNSEL

*Edward A. McCoyd* for petitioners. *Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano* for guardian ad litem.

### OPINION OF THE COURT

C. RAYMOND RADIGAN, J.

By these proceedings, petitioners as guardians of the property of Brennan C. Daly seek authorization to make annual tax-free transfers to family members. A hearing was held and

the testimony and papers on file reveal the following facts which comprise the findings of the court.

Brennan C. Daly is a profoundly disabled child whose impairments are permanent and affect him both physically and mentally. Although Brennan is now 11 years of age, he weighs less than 37 pounds, and is totally unaware of his environment and of those who provide for his day-to-day needs. Among other things, he suffers from irreparable brain damage and is not able to "turn over, to crawl, to sit, to stand, to kneel" nor "to reach or grasp or transfer [or] even hold an object". Since about the age of five months, Brennan's parents became unable to meet the demands of their son's disability, and foster care was arranged through the Nassau County Department of Social Services. Since that time, his foster parents, Mr. and Mrs. Welch, have totally provided for Brennan in their own home. The court finds the medical and lay testimony as to the devotion of Mr. and Mrs. Welch emotionally stirring in describing an atmosphere of love and unselfish calling. The financial needs of this child in foster care was first provided through a sharing by the parents and Social Services. Since 1987, Brennan's care expenses have been met by the proceeds of a settlement of an action for medical malpractice with the exception of health insurance which is provided through his father's employment. There is approximately $1.6 million now held by the guardians in a mixture of investments. The evidence of past expenditures and the best estimates of near future income and expenses indicate an annual surplus of income of perhaps $60,000 or more. Should Brennan die, petitioner and his wife as parents are his presumptive distributees and would take the entire estate (EPTL 4-1.1 [a] [4]). Besides his parents, Brennan has an older and two younger siblings. The guardian/parent is employed in the banking industry and enjoys a comfortable income. In the circumstances of the settlement providing for Brennan's care, the family does not evidence "any immediate economic need".

By these proceedings, the guardian recommends that annual gifts of $10,000 each be made to the five members comprising Brennan's family. These gifts would largely consume the surplus income, and being within the annual gift tax exclusion, accomplish a tax-free inter vivos transfer. Otherwise expressed, petitioners' application reflects tax planning objectives to reduce Brennan's prospective estate and the impact of inheritance taxes thereon.

The medical testimony offered indicates that Brennan's

present life expectancy is about 15 years. Dr. Charash, M.D., does not anticipate any significant change in Brennan's condition or needs over the course of the next few years and in part predicates the stability found upon the quality of the past and anticipated future care by the foster parents. Mr. and Mrs. Welch have devoted nearly 11 years to Brennan and the record contains no suggestion as to their continued ability or inability to do so. There was suggested, however, that a deterioration in Brennan's condition or the absence of the Welches or someone else equal to them would necessitate Brennan's placement in a residential or hospital environment. Present estimates of the cost of that care were suggested to be as high as $350,000 per year. It would, therefore, seem that an unforeseen change in the health status or an unanticipated event affecting the care givers could place extreme financial pressure upon the guardianship estate. The reality that Brennan's condition will in the future require more than foster care is able to provide appears real and beyond conjecture. The guardian appointed to represent the interests of Brennan recommends that the gift-giving program be followed subject to the further recommendation limiting the period to three years with the right to renew.

Recently, this court has considered and authorized the making of inter vivos gifts to carry out estate planning objectives (Matter of Florence, 140 Misc 2d 393). That matter dealt with a conservatee's estate and had the further benefit of the factual support of the conservatee's subjective desire to accomplish tax planning and savings. Here by reason of Brennan's birth defect, the court will never know just what Brennan would have desired were he capable to reflect upon and make such choices. It further should be considered whether Brennan as a retarded infant for whom a guardian has been appointed (SCPA art 17-A) is entitled to any lesser consideration than a person for whom a conservator or committee has been appointed.

Considering the last question first, to the extent that the doctrine of the substituted judgment is otherwise available, the court perceives no distinction between a person who has received the protection of SCPA article 17-A as opposed to article 77 or 78 of the Mental Hygiene Law. These procedures are all unconcerned with age, each continue until the disability is removed, and together merely afford the family a choice as to which form of adjudication and property caretaker they would feel most comfortable (cf., Mental Hygiene Law § 78.02).

Therefore and while our law has not legislatively provided gift-giving authority, the judicial doctrine of substituted judgment does provide an avenue to reach that end. The court finds no basis to deny that relief to Brennan solely by reason of the form of fiduciary his parents have secured to care for his assets (*Matter of Hymes*, 102 Misc 2d 821).

Although not frequently invoked, the doctrine of substituted judgment has been long recognized in this jurisdiction (*Matter of Lord*, 227 NY 145). While most such gifts are motivated by the donee's need and relationship (*Matter of Flagler*, 248 NY 415), more recent decisions recognize a pattern of giving as a means to gain the objective of tax savings (*Matter of Myles*, 57 Misc 2d 101; *Matter of Carson*, 39 Misc 2d 544). While these authorities rely in part upon the subjective desires of the proposed donor, this court does not believe that subjective intent, however meaningful, must always stand as an indispensable prerequisite to relief. To so conclude would offer an individual as Brennan less opportunity in the law than persons who have come to know a disability in later life. Brennan has not had the opportunity to consider or formulate a lifetime or testamentary plan. He has been deprived of the opportunity to know and convey his personal feelings for those who stand as the natural objects of his bounty. He has not had the opportunity to confer with business or legal advisors and reflect upon what meaning the imposition of inheritance taxes may have upon the plans he would make relative to the succession of his property. Brennan is deprived of these opportunities not by his own choice or inaction but rather by reason of multiple physical and mental disabilities brought upon him by the very event of his birth. In this day and in these circumstances, it would be inappropriate to cling in dogmatic fashion to rules which are incapable of satisfaction. Rather, the court in pursuit of its equitable powers is called upon to do justice. The rules to be fashioned must reflect standards meaningful to the need to be measured. With Brennan then the court must employ an objective standard and inquire as to what a reasonable and prudent person would do in the circumstances (*Matter of Christiansen v Christiansen*, 248 Cal App 2d 398, 56 Cal Rptr 505).

Upon the foregoing, the court is satisfied that Brennan should pursue estate planning objectives and if possible he should adopt a plan to limit the tax impact upon his property

should he die. While Brennan is not being cared for by or in his parents' home, the record reflects reason for this and does not dictate the conclusion that Brennan would choose to turn from his parents and siblings. The suggested plan looks to utilize surplus income, preserve principal and provide a strategy to help maximize the benefits to his family, some of whom will ultimately succeed to his estate. While Brennan's life expectancy is not subject to exact definition, professional judgment now places it at 15 years. As heretofore noted, sudden events could work to place increased demands upon the fund comprising the guardianship estate. This presents a circumstance which dictates caution and a need to review Brennan's asset growth and monitor his condition and needs on a more frequent basis than suggested by the petitioners or recommended by the guardian ad litem.

Upon the foregoing and further recognition of the response given to the court by petitioner during the hearing, the court will authorize solely for the year 1988 gifts of $10,000 to each of the siblings of Brennan C. Daly. This determination is without prejudice to the renewal thereof in future years upon papers revealing the extent of Brennan's assets, his needs and prognosis. The court is making this limitation on the use of excess income in order to conserve assets for possible future need and which may also be in the best interests of the parents' over-all estate planning. The determination herein should not be construed as an inflexible precedent for future application.

A separate order will be entered fixing the fee of the attorney for the petitioners and the guardian ad litem following the submission of their affidavits of services.

In reviewing the guardianship portfolio, the court notes that a substantial portion of the estate assets are invested in certificates of deposit which may not achieve the best tax results. While the court will not substitute its judgment in place of the guardian as fiduciaries as to the prudent means to invest funds, the court must be satisfied that the funds are properly invested, especially when the funds are invested under joint control pursuant to SCPA 1708. Accordingly, a conference is scheduled for Wednesday, January 4, 1989, at 11:00 A.M. at which time the guardians and their attorney are to appear to discuss this matter.