OPINION OF THE COURT
C. Raymond Radigan, J.
This proceeding brought under SCPA 1420 requests a construction of article IV of decedent’s will which reads as follows: "It is my wish that the balance of my Estate be set up *625 In Trust for the sole benefit of my son, Ralph Scatamacchia, to be used for his total care and education at the Woodmere Health Related Facility, or in the residential home of the United Cerebral Palsy Association of Nassau County, Inc. (which home at this writing, is in the planning stage), and at such school as the Cerebral Palsy Association of Nassau County, Inc. shall deem appropriate. Such total care shall be for as long as he shall live, after which the residue of the trust shall be divided as follows”.
The report of the guardian ad litem indicates that the trust beneficiary is severely retarded and is confined to a wheelchair. He was admitted to the Woodmere Health Related Facility on August 16, 1980 following his mother’s death and remained there until October 5, 1988 when he entered the United Cerebral Palsy Association home known as the Bay-ville Facility, where he resides today. The cost of care at Woodmere which was $22,630 per year in 1980, exclusive of medical care and medicines, rose to $35,770 in 1990.
The Bayville Facility where Ralph presently resides is a skilled nursing home providing 24-hour staffing by registered nurses. Its cost of care is $4,000 per month.
The trust when established had a corpus of $200,000. The trustees in providing total care for Ralph have expended both principal and interest, and the corpus on hand today approximates $43,000.
Petitioners claim that the decedent intended the principal of the trust to be utilized for the beneficiary’s maintenance, education and luxuries but not for his medical care or for medical catastrophies. This contention perhaps should be viewed in light of the real purpose of this proceeding which is to make the beneficiary eligible for Medicaid. This court agrees with the guardian ad litem that petitioners’ premise is not discernible, expressly or impliedly, from the language employed in the will. The decedent’s use of the phrase "total care” cannot under the guise of interpretation be construed to exclude medical care.
The other contention is that the decedent by providing that the residue of the trust, after Ralph’s death, shall be paid to designated parties did not envision that the principal of the trust would be exhausted in Ralph’s lifetime. The guardian ad litem cogently argues that had the decedent anticipated the dramatic increase in the cost of Ralph’s care she would have left her entire estate to her son rather than leaving bequests *626 to other relatives who were not as close to her or in as much need as her son.
The court observes that the clause disposing of the remainder or residue of the trust provides evidence of decedent’s intention not to exhaust principal. It is not plausible to ascribe to the decedent an intention to exhaust the fund she set aside for her son by allowing her trustees to pay for medical care he was entitled to receive free of charge, leaving him without the means of paying for his personal needs and luxuries such as summer camp and related recreational items. Decedent therefore must be impliedly deemed to have restricted payment of principal except as may be permitted by the trustees in the exercise of their discretion (Matter of Escher, 52 NY2d 1006). If this were not so, decedent, as pointed out by the guardian ad litem, would not have made bequests totaling $70,000 to other relatives and a charity, but would have added such sum to the trust for her only son had she contemplated the fund would have been depleted in so short a time.
Article IV of the trust is accordingly construed to reflect decedent’s intention to permit the trustees to withhold, in the exercise of their discretion, payments from principal to pay for medical and other care that is available to the beneficiary at no cost from governmental or other programs.
The guardian ad litem, Mark Brosnan, is to be commended for thoroughness and quality of his work. The size of the fund, unfortunately, does not allow the court to award him full compensation (Matter of Kaufmann, 26 AD2d 818, affd 23 NY2d 700). His fee is set in the sum of $2,350.