OPINION OF THE COURT
Bernard M. Bloom, S.
In this proceeding, the conservator for Bessie Hilda Garbow seeks authorization to establish an irrevocable inter vivas trust for the lifetime benefit of the conservatee containing further provisions for the continuation of the trust upon her death to provide for the supplemental needs of the conservatee’s mentally retarded adult son.
By order of this court dated November 28, 1988, the petitioner was appointed conservator for Bessie Hilda Garbow, a widow, almost 90 years of age, who by reason of her mental and physical condition was determined to be unable to manage her financial affairs following the death of her husband on May 11, 1988. Since the time of her husband’s death, the conservatee has been a resident of Palm Gardens Nursing Home, located in Brooklyn, New York. The present value of the conservatorship estate is approximately $700,000 consisting of bank accounts and certificates of deposit, the income and part of the principal of which has been utilized to pay for the conservatee’s care at the nursing home as well as her other living expenses.
The conservatee’s only child, Marvin Garbow, is a 64-year- *1003 old mentally retarded person, who presently resides at the Rutland Nursing Home located in Brooklyn, New York. As a result of his disability Marvin is entitled to certain government assistance benefits including SSI and/or Medicaid.
Subsequent to the death of the conservatee’s husband, an investigation and inquiries as to the conservatee’s personal affairs failed to uncover a will executed by the conservatee. A review of the court records indicates that the conservatee does not possess the requisite capacity to execute a will. Consequently, if the conservatee should die, Marvin Garbow, as her sole issue, is a presumptive distributee entitled to receive her entire estate. (EPTL 4-1.1.) Should Marvin or a guardian appointed on his behalf receive this inheritance, his eligibility for public assistance benefits may be jeopardized and his inheritance may also be subject to claims for reimbursement for past assistance received, at least upon his death. (See, Social Services Law §§ 104, 369.)
In an effort to preserve the conservatee’s assets for the benefit of Marvin upon the conservatee’s death while still ensuring the care of the conservatee during her lifetime, the conservator seeks authority to establish an irrevocable inter vivas trust. Pursuant to its terms, as amended, the entire conservatorship estate would be transferred to a trustee, the conservator herein, who would apply the income and so much of the principal as is necessary for the benefit of the conservatee during her lifetime. Upon her death, if her son Marvin Garbow should survive, the trust is to continue as a "supplemental needs trust” where by its terms the trustee shall expend only the income to provide Marvin with goods and services not provided through his government entitlements. Upon Marvin’s death or in the event Marvin should predecease the conservatee, the trust is to terminate and the trust property is to be distributed equally amongst the conservatee’s siblings and a daughter of a predeceased brother per stirpes.
At the outset, it is observed that under the existing laws of this State, no statute exists expressly empowering the court to authorize the creation of trusts on behalf of a person under a disability. However, effective April 1, 1993, the courts will have the statutory authority to create trusts and sanction other types of transfers on behalf of these persons. (L 1992, ch 698, § 3.) Until such date, the judicial doctrine of "substituted judgment” provides the governing authority for assessing the propriety of a proposed transfer for the purpose of providing for the needs of one other than the ward/transferor. (Matter *1004 of Daly, 142 Misc 2d 85 [Sur Ct, Nassau County 1988]; Matter of Florence, 140 Misc 2d 393 [Sur Ct, Nassau County 1988].) Under this doctrine, the courts will authorize the transfer of a ward’s property where either of the following two standards are satisfied: (1) the ward, if competent, would actually have made the proposed transfer, or (2) the ward as a reasonably prudent person, would make the proposed transfer. (Matter of Florence, supra.) The first standard involves an assessment of the expressed desires of the ward before the onset of his or her incapacity. (Matter of Salz, 80 AD2d 769 [1st Dept 1981].) The second standard requires the court to assess how a reasonably prudent person would act under the circumstances presented. (Matter of Florence, supra.) Crucial to either assessment is a finding that the transfer would not jeopardize the welfare of the ward and that sufficient assets remain to satisfy his or her present and future needs. (Matter of Daly, supra; Matter of Florence, supra; Matter of Fleming, 173 Misc 851 [Sup Ct, Kings County 1940]; Matter of Calasantra, 154 Misc 493 [Chautauqua County Ct 1935].)
 Both of the standards have been met herein. The record contains evidence of the conservatee’s prior use of trust arrangements as well as other declarations indicative of or consistent with an intention to preserve her son’s government entitlements. From an objective perspective, the propriety of creating the proposed trust, which ensures the conservatee’s well-being during her lifetime while enabling her son to enjoy an enhanced quality of life upon her death without risking his public assistance, cannot be questioned. To that end, supplemental needs type trusts created by a third person who has no obligation to support the beneficiary thereof, will not disqualify the beneficiary from public assistance where, as here, the settlor’s intention that the distributions are to supplement and not supplant the beneficiary’s government entitlements is clearly and unequivocally expressed. (See, e.g., Matter of Escher, 52 NY2d 1006 [1981]; Matter of Scatamacchia, 150 Misc 2d 624 [Sur Ct, Nassau County 1991]; Matter of Surut, 141 Misc 2d 1005 [Sur Ct, NY County 1988]; Matter of Ross, 96 Misc 2d 463 [Sur Ct, Yates County 1978].) Notably, under New York law, a parent has no obligation to support an adult child. (See, e.g., Domestic Relations Law § 32; Estate of Hand, NYLJ, Mar. 23, 1983, at 15, col 2 [Sur Ct, Suffolk County]; Matter of Escher, 94 Misc 2d 952 [Sur Ct, Bronx County 1978].) The recent decisions of the courts of this State disapproving of the use of supplemental needs trusts and other trust arrange- *1005 merits for the purpose of insulating the trust assets from public assistance claims of the beneficiaries thereof involve either self-settled trusts (see, e.g., State v Coyle, 171 AD2d 288 [3d Dept 1991]; Matter of Tutino v Perales, 153 AD2d 181 [2d Dept 1990], appeal dismissed 75 NY2d 1.004, Iv denied 76 NY2d 705 [1990]; Matter of Arens, NYU, Nov. 6, 1992, at 26, col 2 [Sur Ct, Kings County]; Matter of Shaw, NYU, July 8, 1992, at 33, col 1 [Sur Ct, Nassau County]) or third-party trusts whereby its terms the claimed intention to limit the use of the trust assets to providing nonsupport items is not adequately expressed. (See generally, Matter of Hoelzer v Blum, 93 AD2d 605 [2d Dept 1983]; Matter of Oddo v Blum, 83 AD2d 868 [2d Dept 1981].) None of the concerns expressed therein are applicable to the proposed trust and the court is unaware of any New York State or Federal proscriptions which would preclude the relief requested herein. Notably, the inability of this court to authorize the creation of a supplemental needs trust for the purpose of insulating the inheritance of a distributee/public assistance recipient after the death of the conservatee/settlor herein, assuming she were to die intestate, provides additional support for granting the relief. (See, e.g., Matter of Arens, supra.)
All of the interested persons as well as the Department of Social Services have either filed written consents or waived any right to object to the relief requested. Based upon the foregoing, the court determines that the creation of the proposed trust, as amended, is in the best interests of the conservatee and its terms and purpose are in conformity with and effectuate the conservatee’s past conduct and declarations. The trust serves as a prudent method of securing the conservatee’s well-being and that of her child while affording both persons the full and/or allowable benefit from the conservatorship fund.
In light of the above, the conservator may, upon the filing of an accounting, move to terminate the conservatorship. (Mental Hygiene Law § 77.35.)