*216 OPINION OF THE COURT
Renee R. Roth, S.
This application by the SCPA article 17-A guardians of the property of Joyce Gertrude Schulze, a mentally retarded person, seeking permission to transfer guardianship funds to a trust to be created for her lifetime benefit (with most of the remainder distributable to private foundations established by her brothers) requires the court to determine whether article 81 of the Mental Hygiene Law preempts article 17-A with respect to the authority of guardians to make gifts on behalf of their ward. The guardians note that, in response to an informal query prior to filing the petition, their power to make such gifts was questioned on the theory that only guardians appointed under article 81 have such power.
The record establishes the following. Joyce, born with Down syndrome, is in her late 50s and has severe neurological deterioration and respiratory difficulties. In fact, she is presently on life support and her attending physician reports that she may die within weeks. Her brothers (her sole distributees) have served for decades, along with an attorney and a family financial advisor, as Joyce’s article 17-A guardians. The total value of the guardianship fund is currently in excess of $50 million.
Petitioners seek to place substantially all of the guardianship fund in the proposed trust which (pursuant to the terms of the revocable trust instrument) would be governed by article 17-A until the ward’s death. In other words, the availability of the ward’s funds for her benefit would remain unchanged during the balance of her lifetime. The proposed trust device, however, would allow her brothers to channel their presumptive shares from her intestate estate to their charitable organizations in greater amounts than would be the case if such shares went first to them and then, net of estate tax, to such organizations. It is noted that conditioning such remainder dispositions upon the ward predeceasing her brothers would leave the intestate distribution of the ward’s estate otherwise unchanged.
A guardian ad litem was appointed to represent the ward’s interest and has filed a report recommending that the relief be granted.
There is no express provision in article 17-A of the SCPA (guardianships for the mentally retarded and developmentally *217 disabled) for the type of relief that is sought here. Authority to make gifts on behalf of a ward is, by contrast, expressly conferred by the terms of article 81 of the Mental Hygiene Law (Mental Hygiene Law § 81.21). But the express provision for gift giving among the powers of an article 81 guardian and the absence of such express provision from article 17-A does not necessarily denote that article 17-A guardians have no such power. To the contrary, for the following reasons, it is concluded that article 17-A guardians inherently have such power and under appropriate circumstances may be allowed to exercise it.
Decisional law has long recognized the authority of guardians (including those appointed under article 17-A) to make gifts from guardianship funds where the wards would not be adversely affected under the circumstances and where the wards themselves would likely make such gifts if they had the capacity to do so (see Matter of Schulze, NYLJ, Sept. 3, 1996, at 30, col 1, and cases cited therein). Intra-family tax savings and maximization of gifts to charity, the purposes underlying the present application, are among the objectives that have been recognized as supporting guardians’ exercise of such authority (id.).
As its preamble makes clear, article 81 was designed to replace conservatorships and committees (under Mental Hygiene Law articles 77 and 78) with a more flexible and less intrusive system for protecting the interests of incapacitated persons (Mental Hygiene Law § 81.01). Accordingly, when article 81 was enacted articles 77 (conservatorships) and 78 (committees) were repealed, although the prior appointments thereunder were preserved in order to assure a continuing safety net for the wards (see L 1992, ch 698, § 4). By contrast, article 81 did not purport to repeal article 17-A. Moreover, the legislative history of article 81 does not suggest that its enactment was intended to withdraw or alter any aspect of the protections and authority previously accorded by article 17-A (L 1992, ch 698).
Given the salutary purpose underlying article 81, it could not have been intended to serve as an impediment to protecting article 17-A wards. Article 81 would certainly be an impediment if it required guardians duly appointed under article 17-A to bring a further proceeding (i.e., under article 81) before they could exercise the planning and giving powers that had long *218 been recognized as theirs under common law. Indeed, the present case illustrates the consequences of interpreting article 81 as requiring guardians (in this case, fiduciaries appointed years before article 81 was enacted) to start yet another proceeding that (under these exigent circumstances) they might not have time to complete.
Based upon the foregoing, a decree has been signed granting the petition.