Matter of Y.G. (I.G.) (2025 NY Slip Op 51824(U))

[*1]

Matter of Y.G. (I.G.)

2025 NY Slip Op 51824(U)

Decided on November 19, 2025

Surrogate's Court, Rockland County

Cornell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2025
Surrogate's Court, Rockland County

In the matter of the Petition of Y.G. and F.G.Q, co-Guardians of I.G., a developmentally disabled person, for leave to draw and apply funds.

File No. 1995/260

Alden H. Wolfe, Esq.
Alden H. Wolfe, P.C.
Attorney for Petitioners
20 Squadron Blvd., Suite 330
New City, NY 10956

Keith J. Cornell, S.

Before the Court is the petition of the co-guardians of I.G., a developmentally disabled person, for permission to withdraw $100,000 from the ward's guardianship estate for the purpose of making a charitable donation. Petitioners also seek approval of payment of legal fees to their attorney for the cost of preparing and filing this petition. The following papers were considered in deciding this application: 
1. Petition to withdraw funds, verified on October 7, 2025;
2. Affirmation in support of F.G.Q., co-Guardian, dated October 7, 2025;
3. Affirmation of legal services of Alden H. Wolfe, Esq., dated October 16, 2025;
4. Affirmation in support of Jesse M. Gaber, CPA, dated October 7, 2025;
5. Affirmation of exigent circumstances of Alden H. Wolfe, Esq., dated October 16, 2025.
Background
The Ward was born on XX XX, 1990. At the age of four months, she received a vaccine for Diphtheria-Pertussis-Tetanus (DPT). Subsequently, she developed severe and intractable epilepsy. Letters of guardianship of the person and property were issued to her parents on June 2, 1995. In a decision dated June 21, 1995, the Ward was awarded a settlement from the Vaccine Act. Two annuities were purchased on her behalf to correspond with her ongoing cost of care and her lost wages.
Initially, the ward received approximately $13,000 in monthly payments and reported monthly out-of-pocket expenses of approximately $4,000. She now receives approximately $31,000.00 per month from the annuities. Her monthly expenses have also increased, but the [*2]total is now approximately $17,850.00. Due to the annual excess, and prudent investments by the co-guardians, at this point she has amassed an estate of approximately $8,000,000.00. 
Petitioners wish to withdraw $100,000.00 from the guardianship estate to make a charitable donation to their church. They argue that their attorney, Alden Wolfe, and their accountant, Jesse Gaber, have advised them to incorporate charitable giving to offset the estate's realized gains. They further report that the ward attends the church regularly and she enjoys being part of the church community. They state that the donation would be restricted for uses that would honor the ward and would be consistent with the church's mission. In particular, they propose to fund repairs to an elevator, the front steps, and entry areas, all to increase safety and accessibility. They also propose to direct that the remainder of the funds be used for acts of charity, emergency medical funds, and to support the youth ministry.
Petitioners requested an expedited review of this petition based on upcoming changes to federal tax law that will affect the deductibility of the proposed charitable contribution and decrease its value to the estate as a tax reduction strategy.
Discussion
The basic premise of Article 17-A is that a person who qualifies for such a guardianship "will not outgrow her need for a guardian at age eighteen" because she "suffers from a permanent qualifying disability" that renders her incapable of managing herself or her affairs (Matter of Robert C.B., 68 Misc 3d 704, 708 [Surr Ct Dutchess Co 2020]). Essentially, Article 17-A seeks "to ensure long-term guardianship of persons who never were and never will be able to care for themselves." (Radigan & Kelly, Article 17-A Guardianship Statute: Still Alive and Well, NYLJ, 03/14/16). The Court will appoint a 17-A guardian when such an appointment is in the best interest of the disabled person.
Unlike guardianships granted under Article 81 of the Mental Hygiene Law, in which the relief granted is "closely tailored to grant the guardian no more power than is absolutely necessary under the circumstances of the case" (Matter of Chaim A.K., 26 Misc 3d 837, 844 [Surr Ct, NY Co 2009]), the appointment of a guardian under Article 17—A is an entirely plenary guardianship. It has often been noted, and lamented, that "the plain language of Article 17—A does not grant a court authority or discretion to limit or tailor the scope of guardianship of the person to address the individual's specific areas of need" (In re Guardian for Michelle M., 52 Misc 3d 1211(A), [Surr Ct NY Co 2016]). A key Article 81 provision that has been found to be lacking in Article 17-A, at least in terms of express statutory authority, is the guardian's power to make gifts of the ward's property (Matter of Robert C.B., 68 Misc 3d at 708).
The Court of Appeals has long recognized the inherent discretion that the SCPA implicitly vests in the Surrogate's Court for matters within its jurisdiction (see Stortecky v. Mazzone, 85 NY2d 518 [1995]). In Stortecky, the Court observed that "Surrogate's Court, as a court of limited jurisdiction, may exercise only the powers conferred upon it by statute and those powers incidental, inherent or necessary to do justice in a particular case to which its jurisdiction extends" (id. at 524). In particular, the Court reasoned that treating silence in a statute as a limit on the Surrogate's broad discretionary authority "would vitiate the third statutory directive - that the Surrogate administer justice" in those cases to which its jurisdiction extends (id.). 
This line of reasoning has been employed by Surrogates who read the SCPA as vesting the court with the implicit authority and inherent discretion to grant powers to an Article 17-A guardian that are not expressly provided by the statute. For instance, in Matter of Schulze, Surrogate Roth found that Article 17-A guardians have the inherent power to give gifts of the [*3]ward's funds in appropriate circumstances (23 Misc 3d 215, 217 [Surr Ct NY Co 2008] ["the express provisions for gift-giving among the powers of an Article 81 guardian and the absence of such express provision from Article 17-A do not necessarily denote that Article 17-A guardians have no such power"]). Similarly, in Matter of Joyce G.S., Surrogate Holzman found that Article 17-A guardians have the power to engage in tax saving transactions on behalf of their wards (30 Misc 3d 765, 769 [Surr Ct Bronx Co 2010] ["there is no evidence of any legislative intent to remove this court's jurisdiction or power to act on behalf of an Article 17-A ward with regard to an issue merely because Article 17-A lacks specific provisions with regard to that particular issue while Article 81 or one of its predecessors had or has such provisions"]. This Court adopts the interpretation of these learned courts and finds that the implicit authority exists to approve a gift from a 17-A guardianship account.
In determining whether to allow a 17-A guardian to make a particular gift from the estate of the ward, courts have relied on the doctrine of substitute judgment (see, e.g., Matter of Daly, 142 Misc 2d 85, 88 [Surr Ct. Nassau Co 1988] [Radigan, J.] [holding that in the case of a person subject to 17-A guardianship "the court must employ an objective standard and inquire as to what a reasonable and prudent person would do in the circumstances" ]). Generally, a gift from the estate of the ward will be authorized if the court determines: (1) the ward does not require the funds for maintenance and support; and (2) the ward would be likely to make such a gift if she were capable of doing so (see Matter of Gabrow, 155 Misc 2d 1001, 1004 [Surr Ct. Kings Co 1992]).
Upon review of the papers submitted, the Court finds that both prongs of the test have been satisfied. Currently, the ward has over $8,000,000.00 in her estate. Her annual expenses are significantly less than her annual income, and the co-guardians' investment strategy has increased the estate significantly. The $100,000.00 that the co-guardians seek to donate to the church will have no detrimental impact on the ability of the guardianship estate to meet the ward's needs. Further, based on the affirmation of the ward's father and his description of the role of the church in the ward's life, the Court finds that a reasonable and prudent person in her situation would be likely to make a significant charitable donation to the church. Therefore, the Court finds that the donation of $100,000.00 is a reasonable and appropriate use of guardianship funds. 
The Court notes that based on the size of the estate, additional planning may be necessary to manage possible New York State estate tax consequences.
Finally, the Court approves the payment of the $2,835.00 to Alden Wolfe, Esq. for legal fees incurred in bringing this petition.
Therefore, it is 
ORDERED that the request for permission to withdraw funds in the amount of $100,000.00 for a charitable donation to the church is GRANTED; and it is further
ORDERED that the request for permission to withdraw funds in the amount of $2,835.00 for payment to Alden Wolfe, Esq. for legal services is GRANTED.
Dated: November 19, 2025
New City, New York
HON. KEITH J. CORNELL
Rockland County Surrogate