IN MATTER OF ESTATE OF BARR, Deceased: STATE, Appellant, v. BARR, and another, Respondents.

*No. 75-522. Argued May 2, 1977.—Decided June 1, 1977.*
(Also reported in 253 N.W.2d 901.)

For the appellant the cause was argued by *E. Weston Wood*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondents there was a brief by *Foley & Capwell, S. C.* and oral argument by *John W. Foley*, all of Racine.

CONNOR T. HANSEN, J.   The single issue presented in this case is whether the trial court correctly determined that under the provisions of the trust document, the distributive share transferred to the widow was a life estate.

On July 7, 1972, Harry G. Barr (hereinafter grantor or settlor) established a revocable trust. Constance B. Barr, his wife (hereinafter widow), was to become a

beneficiary under the terms of the trust. She and the First National Bank and Trust Company of Racine (hereinafter jointly referred to as respondents) were named as co-trustees. In pertinent part, the trust instrument provided:

"*SECOND*. A. Upon the death of the Grantor the Trustees shall pay and apply such amount or amounts of income and principal (even to the extent of all) as my Trustees may deem appropriate for the support, welfare and maintenance of my wife, Constance B. Barr. Said income and principal shall be distributed in such amounts as my Trustees deem proper, and my Trustees may disregard to the extent they deem appropriate other resources that she may have or the duty of any other person to provide for her, but my Trustees shall wholly disregard the interests of subsequent beneficiaries.

"B. Upon the death of my wife, Constance B. Barr, my Trustees shall transfer, assign and distribute the then remaining principal and undistributed income, if any, to my son, James C. Barr. If my son, James C. Barr should not survive the time set for distribution hereunder, I then direct that all of the rest, residue and remainder of the Trust Estate shall be distributed as follows:

"1. One-third ($\frac{1}{3}$) shall be transferred, assigned and distributed to my daughter-in-law, Geraldine Barr.

"2. Two-thirds ($\frac{2}{3}$) shall be transferred, assigned and distributed to the then-living descendants of my said son in equal shares, per stirpes.

"*THIRD*. In the event that my wife, Constance B. Barr, or her guardian if she should become incompetent or disabled, believes that the amount distributed to her by my Trustees is inappropriate for her welfare, support and maintenance when considered in connection with the financial condition of the Trust, and her needs and circumstances, I then direct that my said wife or her said guardian may, at any time, petition a court having jurisdiction over the Trust for a determination of what amount is appropriate to be paid to her out of the principal and income under the terms of the Trust. My Trustee shall, in no event, be held liable on account of the distributions that they have made to her or her guardian from

principal or income prior to a determination of an amount by the court."

The grantor died on May 1, 1974, without having revoked the trust. Surviving him were his widow and one son, James C. Barr. The respondents, as trustees, caused to be filed with the Wisconsin Department of Revenue an inheritance tax return for the estate of the settlor. The full value of the trust assets appears to have been $72,-431.91. The actual valuation of the trust assets is not contested. The inheritance tax return reported the distributive share of the widow to be a life estate interest in the trust assets valued at $26,852.68, and the distributive share of the son to be the remainder interest valued at $45,579.23. The respondents determined that the total inheritance tax due was $3,390.73, and tendered that amount to the department of revenue.

The department of revenue informed the respondents that it interpreted the pertinent trust provisions to require that the entire trust estate should be taxed to the widow as the primary beneficiary. The department of revenue recomputed the total tax due as $4,102.99 and requested the payment of $712.26 as the difference between that amount and the amount previously tendered.

The respondents then filed a petition for a determination of inheritance tax pursuant to sec. 72.30 (4), Stats., seeking to settle the disagreement between the parties as to whether the value of the whole trust estate or only the value of a life estate therein should be taxed to the widow.

Following a hearing, the trial court made and filed its findings of fact and conclusions of law. The trial court concluded as a matter of law that the facts and language of the trust document did not justify a determination that the widow was receiving an absolute fee in the trust assets. Judgment was entered accordingly in which it was ordered and adjudged:

"That Constance B. Barr, widow of Harry G. Barr has received only a life estate under the Harry G. Barr Revocable Trust and said widow may not be taxed under the Wisconsin Inheritance Tax on more than a life interest in the corpus of said trust as it was constituted as of the date of the death of Harry G. Barr."

The parties do not dispute the fact that a transfer such as would trigger the imposition of the tax has occurred in this case. The revocable trust established by the settlor, the income of which was to be distributed to the widow according to specific directions subsequent to the settlor's death, falls within the type of transfer defined by sec. 72.12(4)(b), Stats. The parties further do not dispute the relationship existing between the settlor and the beneficiaries. The controversy is based upon a determination of the nature of the interests which were transferred to the widow and son upon the death of the settlor.

It is not contended that any ambiguity exists in the provisions of the trust document or in the trust document when viewed as a whole. The trial court found no ambiguity. We likewise conclude that the trust document is not ambiguous.

This court has held that in construing trusts, both testamentary and *inter vivos,* the language thereof should be construed so as to give effect to the subjective intent of the settlor. *In re Fortwin Trust,* 57 Wis.2d 134, 138, 203 N.W.2d 711 (1973); *In re Bowler Trust,* 56 Wis.2d 171, 176, 177, 201 N.W.2d 573 (1972); *Estate of Gehl,* 39 Wis.2d 206, 211, 159 N.W.2d 72 (1967); *Welch v. Welch,* 235 Wis. 282, 306, 290 N.W. 758, 293 N.W. 150 (1940); *Lichter v. Thiers,* 139 Wis. 481, 488, 121 N.W. 153 (1909). Where there is no ambiguity inherent in the trust document, that intention may be ascertained from the language of the trust document itself, considered in light of the circumstances surrounding its drafting.

*Tomow v. N. E. Isaacson & Associates, Inc.,* 60 Wis.2d 1, 24, 208 N.W.2d 824 (1973); *In re Fortwin Trust, supra,* 138; *Estate of Breese,* 7 Wis.2d 422, 426, 96 N.W.2d 712 (1959).

Thus, a determination of the interests transferred to the widow and the son is dependent upon the clear meaning of the trust document.

The appellant contends that the widow received an absolute fee in the trust assets because the trustees could, in their discretion, transfer portions of the principal to her. There is a possibility that portions of the principal, and indeed the whole of the principal could be transferred to the widow. The fact remains, however, that title to the trust assets was vested by the settlor in the trustees and not in the widow. *See: In re Mueller Travel Agency, Inc.,* 56 Wis.2d 207, 201 N.W.2d 589 (1972). That in itself strongly mitigates against a finding of an absolute fee in the widow.

The trustees could transfer portions of the principal to the widow only if they determined in their discretion that such amounts were appropriate for the support, welfare and maintenance of the widow during her lifetime. The decision lay with the trustees and not with the widow. The appellant concedes that in view of the provisions of sec. 701.19, Stats., the widow, although a trustee, could not participate in any decision by the trustees whether to make a distribution of principal or income to her. The fact that the trustees were empowered to disregard the interests of the remainderman in making the determination to distribute portions of the principal to the widow does not lessen the fact that such distribution lay solely within their discretion. Nor does it lessen the fact that the trustees were not required at any time to transfer the entire trust assets to the widow.

Moreover, the content of the quoted *THIRD* provision of the trust document, enabling the widow to resort to

court intervention in the event that she believed that amounts distributed to her were inappropriate, is merely a recitation of an already existing right of the widow to challenge what she may believe is an abuse of the discretion vested in the trustees. That provision does not relieve the trustees of their discretionary power and vest control of the trust assets in either the widow or the court. It merely makes the exercise of their discretion subject, as it is in any event, to court review.

If the settlor had intended to transfer an absolute fee in the trust assets to his widow, he could have and no doubt would have done so directly, without resorting to vesting title to the trust assets in the trustees. Had the settlor intended the above result there would have been little if any need for this trust. Moreover, there would have been no need to designate a remainderman to take the residue. The further fact that the settlor did not indicate that the trust assets were to be transferred to the widow at a certain time or upon a certain happening, irrespective of the trustee's discretion, reflects an intent to create merely a life estate in the widow.

In II Scott on Trusts (3d ed.), sec. 128.4, pp. 1018, 1019, it is stated:

"*§128.4. Trusts for support.* Where by the terms of the trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as may be necessary for the support of the beneficiary, the extent of the interest of the beneficiary depends upon the manifestation of intention by the settlor. The court will not interfere to control the discretion of the trustee as long as he acts within the bounds of a reasonable judgment in the exercise of his discretion, but the court will interfere when he exceeds those bounds. As to the amount which the trustee may or should expend for the support of the beneficiary, much depends upon the circumstances. In the first place, the will may indicate the character of the support to be given, as for example where the settlor specifies that the

support shall be good or comfortable or generous. Much depends, of course, on the size of the trust estate, on the condition in life of the beneficiary, on the extent of the discretion conferred upon the trustee."

See also: Restatement, Trusts, 2d, sec. 128, pp. 276-280.

In the case before us, the record reflects that the widow was seventy-six years of age and in good health at the time of the settlor's death, and that she was the beneficiary of a revocable trust which she had established on July 7, 1972. Her trust was valued at approximately $120,000 on December 31, 1974. No principal from the trust created by the settlor had been paid to Mrs. Barr up to the date of the death of the settlor.

Under the facts of this case we conclude that the language of the trust document indicates that the settlor intended to insure an appropriate amount of support for his widow during her lifetime. Whether the income alone would be sufficient to meet the needs of the widow, or whether the principal would have to be invaded, were decisions left to the discretion of the trustees, and decisions over which the widow had no control. It is clear that the settlor intended that any remaining assets and undistributed income were to pass to the designated remainderman. The widow had no measure of control to direct the passage of assets upon her death. The widow had no absolute right to the assets. The whole plan of the trust reflects the fact that the settlor intended that the widow receive nothing more than a life estate in the trust. There was no transfer of an absolute fee to the widow.

We do not deem it necessary to discuss in detail the financial status of the widow independent of the trust. What in fact may or may not occur in the future in regard to principal distribution has no bearing on ascertaining the subjective intent of the settlor as to the interest in his estate transferred to his widow.

Also, we are not impressed by the argument of the appellant that there is no method of determining the widow's interest in the estate unless the tax is imposed upon the full value of the trust. The trial court accepted the respondents' valuation of the trust assets. The correctness of the figures used by respondents in determining the tax are not in dispute. We are of the opinion that sec. 72.28 (1) (c), Stats., provides a method for the valuation of the widow's limited estate and the son's future estate.[1] Since the mathematical result of the use of this method is not challenged, we need address the issue no further.

*By the Court.*—Judgment affirmed.

[1] Sec. 72.28 (1) (c), Stats., governs the valuation of future or limited estates:

"(c) Future or limited estates. 1. Method of valuation. a. Determination of the value of every future or limited estate, income, interest or annuity dependent upon any life or lives in being shall be based on tables designated by the department. These tables shall be those used by the internal revenue service for like computations.

"b. If valuation cannot be established under subd. 1.a, the commissioner of insurance, upon application of the department or county court, shall determine the value. The commissioner's report shall be presumptive evidence that his method of computation is correct."