In the Matter of the Administration by Raymond JAWASKI, Esther Ketterling, and Agnes Wegner, as Trustees of the Trust Created by Alex T. Jawaski.

PROTECTION AND ADVOCACY PROJECT OF the STATE OF NORTH DAKOTA, Petitioner and Appellant,

v.

Raymond JAWASKI, Esther Ketterling, and Agnes Wegner, as Trustees of the Trust created by Alex T. Jawaski, Respondents and Appellees.

Civ. No. 880340.

Supreme Court of North Dakota.

Sept. 26, 1989.

Wheeler, Wolf, Bismarck, for petitioner and appellant; argued by Gerry Gunderson.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for respondents and appellees; argued by James R. Jungroth.

GIERKE, Justice.

The Protection and Advocacy Project for the State of North Dakota (the Project) has appealed from a county court judgment regarding the administration of the Alex T. Jawaski Trust by Raymond Jawaski, Esther Ketterling, and Agnes Wegner (the Trustees). We affirm.

On September 27, 1983, Alex T. Jawaski (Jawaski) and the Trustees executed a trust instrument providing:

"The Trustor has delivered to the Trustees certain property described in the attached Schedule A contemporaneously with signing this Agreement, the receipt of which is hereby acknowledged. The parties to this Agreement agree that all property transferred or devised to the Trustee is to be administered and distributed as provided in this Agreement.

\* \* \* \* \* \*

"ARTICLE II.

"The Trustees shall hold and dispose of the trust estate as follows:

"(1) During the lifetime of the Jawaski triplets, Magdaline Jawaski, Mae Jawaski and Marcella Jawaski, the Trustees shall pay to the guardians of said Jawaski triplets as much of the net trust income as may be required to provide them with suitable support, care, necessities, medical attention, comfort and maintenance and, at the end of each calendar year, shall distribute the remaining balance of the net trust income equally to those of my other seven children, namely, Ann Bergerson, Martha Berube, Raymond Jawaski, Helen Meiklejohn, Esther Ketterling, Agnes Wegner and Fred T. Jawaski...."

Schedule A was a list of four certificates of deposit valued at approximately $130,000.

After executing the trust agreement, Jawaski and the Trustees went directly to a bank, where Jawaski cashed the certificates of deposits listed on Schedule A. Jawaski purchased a new certificate of deposit for $90,000 and placed the remainder (approximately $40,000) in a checking account, from which, at Jawaski's direction, the Trustees wrote a $5,000 check to each of the secondary beneficiaries (themselves and their four brothers and sisters other than the primary beneficiaries).

Magdaline, Mae, and Marcella Jawaski, the primary beneficiaries of the Jawaski Trust, are mentally retarded. The Project is designed to assist persons with developmental disabilities. See 42 U.S.C.A. § 6042

("the State must have in effect a system to protect and advocate the rights of persons with developmental disabilities"); § 25–01.3–06, N.D.C.C. ("the project, ..., shall provide advocacy and protective services for persons with developmental disabilities and persons with mental illnesses.").

On November 16, 1987, the Project petitioned for supervision of the trust. On December 4, 1987, it demanded an accounting. On February 3, 1988, the Project petitioned for removal of the Trustees and for the appointment of a guardian ad litem for the primary beneficiaries of the trust. The trial court found that Jawaski intended to place only $90,000 in the Jawaski Trust, approved the accounting submitted by the Trustees, and required the Trustees to render an annual account "unless and until a Guardian and Conservator is appointed." The Project appealed from the judgment and has raised as issues whether or not the trial court erred in (1) allowing extrinsic evidence of Jawaski's intent; (2) determining that only $90,000 had been placed in the trust and allowing distribution to secondary beneficiaries; (3) refusing to remove the Trustees; (4) accepting the accounting submitted by the Trustees; (5) refusing to appoint a guardian ad litem; and (6) requiring supervision only until appointment of a guardian and conservator.

The Project contends that the trust agreement is clear and unambiguous, rendering extrinsic evidence inadmissible, and that the trial court therefore erred in allowing extrinsic evidence as to "whether the trustor intended to put only $90,000.00 into trust, despite the clear language of the trust placing four certificates of deposit in trust, valued at more than $90,000.00." The Project relies on *Matter of Larson*, 341 N.W.2d 627, 629 (N.D.1983):

> "The primary objective in construing a trust instrument is to ascertain the intent of the trustor. *E.g., Northwestern National Bank of Minneapolis v. Simons*, 308 Minn. 243, 242 N.W.2d 78 (1976). Where there is no inherent ambiguity in the trust instrument, the trustor's intent may be ascertained from the trust document itself. *E.g., Matter of Estate of*

*Barr*, 78 Wis.2d 254, 253 N.W.2d 901 (1977)."

■ We are not persuaded that the trial court erred in allowing extrinsic evidence as to the amount of money that Jawaski intended to place in trust. "It is axiomatic that the surrounding circumstances from which a contract stems are to be considered when interpreting its provisions." *Delzer Constr. Co. v. New Marian Homes Corp.*, 117 N.W.2d 851, 856 (N.D.1962). "It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context." Restatement (Second) of Contracts § 212 comment b (1981).

■ "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning." Restatement (Second) of Contracts § 202 comment g (1981). Immediately after executing the trust instrument, Jawaski and the Trustees "went direct to the bank," where Jawaski handed a bank employee the certificates of deposit listed in Schedule A, purchased a certificate of deposit for $90,000 and placed the rest of the money in a new checking account. Jawaski and the Trustees left the bank and went directly to Jawaski's house, where Jawaski instructed the Trustees to issue $5,000 checks from that account to each of his seven children other than the primary beneficiaries of the trust. The checks were drawn and Jawaski placed them in Christmas cards, which were then mailed. From our review of the evidence, we have not been left with a definite and firm conviction that the trial court was mistaken in finding that Jawaski intended to place only $90,000 in trust, and that finding is, therefore, not clearly erroneous. Distribution of the funds in excess of $90,000 to the secondary beneficiaries of the trust was permissible, because Jawaski intended to place only $90,000 in trust.

The Project contends that the trial court erred in refusing to remove the Trustees. The Project's contention is primarily based upon its incorrect assumption that the Trustees improperly distributed trust funds

to the secondary beneficiaries. In light of our affirmance of the trial court's finding that Jawaski intended to place only $90,000 in trust, the contention is without merit.

■ The Project contends that the trial court erred in accepting the accounting submitted by the Trustees, because (1) "the accountings are based upon their understanding of the intent of the trustor" [to place only $90,000 in trust], and (2) "that no petition to approve the accountings was ever submitted, and the issue was not properly before the court." Our affirmance of the trial court's finding that Jawaski intended to place only $90,000 in trust is dispositive of the first ground. As to the second ground, the Project demanded that the Trustees provide an accounting of the trust, thereby placing the Trustees' responsive accounting before the court.

■ The Project contends that the trial court erred in refusing to appoint a guardian ad litem. The trial court stated: "I don't see any specific purpose that can be served by a guardian ad litem in this matter." The Project has not indicated any purpose that might have been served by a guardian ad litem that was not served by the Project and the Trustees. We are not persuaded that the trial court erred.

■ The Project contends that the trial court erred in requiring supervision of the trust only until appointment of a guardian and conservator. The Project has "not, however, provided us with any citations to authority or persuasive reasoning upon which to conclude that the trial court erred." *Richter v. Jones*, 378 N.W.2d 209, 213 (N.D.1985). We, therefore, will not consider this contention. *Herzog v. Yuill*, 399 N.W.2d 287 (N.D.1987).

Affirmed.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.