**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 20, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1294**

Cir. Ct. No. **2016PR1600**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT I**

IN THE MATTER OF THE BILL BORCHERT LARSON REVOCABLE TRUST:

THE GREATER MILWAUKEE FOUNDATION,

      PETITIONER-RESPONDENT,

  V.

AMERICAN COMPANY OF IRISH DANCE,

      INTERESTED PARTY-APPELLANT,

TRINITY IRISH DANCE COMPANY,

      CROSS-PETITIONER-RESPONDENT,

UNIVERSITY OF CHICAGO,

      INTERESTED PARTY.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Reversed and cause remanded with directions.*

Before Brash, P.J., Dugan and Gundrum, JJ.

¶1    BRASH, P.J. American Company of Irish Dance (American) appeals an order in which the trial court declared a successor organization to the Trinity Irish Dance Company (Trinity I). Trinity I was the beneficiary of a fund established by the Bill Borchert Larson Revocable Living Trust (Trust) and administered by the Greater Milwaukee Foundation (Foundation). The Trust stated that the Foundation was to make distributions to Trinity I from the fund as long as Trinity I was in compliance with certain requirements set forth in the Trust. The Trust further provided that a successor organization to Trinity I would be eligible to receive distributions from the fund as well, as long as that successor organization also complied with the requirements of the Trust.

¶2    In 2014, after a legal dispute between the Board of Directors and one of the founders, Trinity I changed its name to American. American continued to make claims for distributions from the fund under its new name. However, another dance company—also named Trinity Irish Dance Company, and started by the founder of Trinity I involved in the legal dispute (Trinity II)—began making claims to the fund as well. The Foundation filed a petition with the trial court seeking construction of the Trust and a declaratory judgment as to whether American or Trinity II was the "successor organization" to Trinity I under the Trust.

¶3    The trial court held that Trinity II was the successor organization to Trinity I. The court considered extrinsic evidence—in particular, testimony

received at a court trial—to determine the intent of Bill Borchert Larson, the testator, with regard to the meaning of "successor organization" in the Trust. The court found that Trinity II met that intent.

¶4     We disagree with the trial court's analysis. The law of corporate succession clearly states that American changing its name from Trinity I did not change its corporate identity. Therefore, it was not necessary to determine a successor organization, since American is the same entity as Trinity I, the beneficiary named in the Trust. Furthermore, the terms of the Trust were clear and unambiguous in stating that Trinity I—now American—is the intended beneficiary of the fund as long as it remains in compliance with the requirements of the Trust.

¶5     We therefore reverse the order of the trial court declaring Trinity II the successor organization to Trinity I, and remand this matter for the entry of an order declaring that American is the beneficiary of the fund, subject to the requirements of the Trust, with the Foundation to determine compliance with those requirements as directed in the Trust.

## BACKGROUND

¶6     Trinity I was founded by Mark Howard in the 1990s. It was incorporated in Illinois in 1997 under the name Trinity Irish Dance Company; that corporation was registered in Wisconsin as well, under the same name.

¶7     Howard met Bill Borchert Larson, a philanthropist in Milwaukee, in the spring of 2001, and Larson began providing financial support to Trinity I. When Larson died in 2006, his Trust distributed one million dollars to the Foundation to establish a fund for the benefit of Trinity I or its successor organization. All distributions from the fund had to be authorized by the

3

Foundation to ensure that certain requirements of the Trust were being met. Specifically, those requirements compelled the discontinuation of distributions if Trinity I or its successor organization (1) ceased to operate as a non-profit organization; or (2) ceased to operate "as a dance company primarily for girls." In either event, the Trust mandated that any remaining funds were to be used to provide scholarships to "worthy and deserving" undergraduate students at the University of Chicago who were financing their education primarily on their own.

¶8      In the years that followed, the Board of Directors for Trinity I developed concerns over Howard's management of the finances, particularly with regard to maintaining its non-profit status. After numerous legal battles, Howard split from Trinity I in 2014; however, as the result of a trademark dispute, Howard was awarded the rights to the name Trinity Irish Dance Company. Trinity I then legally changed its name to American, keeping the same corporate officers and the same federal tax identification number it had operated under as Trinity I.

¶9      While those legal disputes between Howard and Trinity I were taking place, the Foundation alerted Trinity I that beginning in 2012 it was withholding distributions because the "inactive status" of Trinity I did not meet the requirements of the Trust. Subsequently, in January 2015, the Foundation notified American that the Foundation was changing the beneficiary to the secondary purpose stated in the Trust—establishing scholarships at the University of Chicago. However, in May 2015, after a meeting between the Foundation and American, the Foundation informed American that it would delay making that change to the secondary beneficiary if American could demonstrate, by the end of the year, that it was meeting the requirements of the Trust. In that case, the Foundation would reinstate the distributions to American.

4

¶10    Meanwhile, Howard formed Trinity II and began making claims to the Foundation that it was the proper recipient of the funds from the Trust as the successor organization to Trinity I. Howard based his claim on his belief that it was the "donor's intent" to have the funds go to "the founder of the organization"—himself. Thus, he asserted that his new dance company, Trinity II, was the successor organization to Trinity I, not American.

¶11    Due to this conflict, the Foundation filed a petition for declaratory judgment with the trial court in November 2016 seeking construction of the Trust regarding the meaning of "successor organization." The Foundation explained that it had operated under the presumption that American was still the intended recipient of the funds since it had simply changed the name of the company and was still using the same tax identification number as Trinity I. However, after Trinity II began making claims to the funds, the Foundation believed that the threshold question had become which entity—American or Trinity II—is the successor organization. The trial court agreed with that posture. The court further noted that after making its decision, it would be up to the Foundation to determine whether that successor organization met the requirements of the Trust necessary to obtain the funds.

¶12    A court trial was held in February 2018. Testimony was received from several witnesses, including: a member of the Board of Directors for American; an accounting consultant who had helped to "clean up" the financial records of American; a professor at New York University who is an expert on Irish dance; a former associate artistic director of Trinity I; and several dancers from Trinity II who also teach and serve as artistic directors for Trinity II.

¶13    The trial court issued its decision in May 2018.   Based on the testimony received, the court determined that Trinity I "does not exist in the way that it was set up at the time that the [T]rust was set up."  The court further found that although American retained the tax identification number of Trinity I, it was "no longer furthering the original mission" of Trinity I in that it was not currently operating as a dance company primarily for girls and was "not actively conducting the live progressive Irish dance performances which clearly captivated Mr. Larson."  Rather, the court found that Trinity II was "doing the work that [the court] believe[s] Mr. Larson wanted to fund[.]"  Therefore, the court held that Trinity II was the proper successor organization to receive the funds from the Trust.

¶14    This appeal follows.

## DISCUSSION

¶15    "A decision to grant or deny declaratory relief falls within the discretion of the [trial] court." *Milwaukee Dist. Council 48 v. Milwaukee Cty.*, 2001 WI 65, ¶36, 244 Wis. 2d 333, 627 N.W.2d 866.  We will uphold a discretionary decision of the trial court if it "'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted).

¶16    American begins by arguing that this matter was not ripe for adjudication, one of the factors required in a declaratory judgment action. *See Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶41, 255 Wis. 2d 447, 649 N.W.2d 626.  American contends that the question presented by the Foundation—which organization was the successor organization pursuant to

the terms of the Trust—lacked ripeness because the Foundation had not determined that the corporate entity of Trinity I no longer existed.

¶17 We first note that Wisconsin law permits court intervention in trust matters. Specifically, WIS. STAT. § 701.0201(1) (2017-18)[1] allows for a court to "intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person[.]" Indeed, the order executed by the trial court indicates that it was entered pursuant to §§ 701.0201(3)(g), (3)(i), and (3)(k), which permit a judicial proceeding involving a trust to "[d]etermin[e] the existence or nonexistence of any immunity, power, privilege, duty, or right"; to "[o]btain[] a declaratory judgment"; or to "[r]esolv[e] a question arising in the administration of a trust, including a question of construction of a trust instrument." *Id.*

¶18 Here, the Foundation—as an interested party in the administration of the Trust—invoked the trial court's intervention by filing its petition to determine whether American or Trinity II was entitled to the funds pursuant to the Trust. Both American and Trinity II had made claims to the funds, and the Foundation sought a declaratory judgment to resolve the question and ensure the proper distribution of the funds. Therefore, the court had jurisdiction to decide this matter.

¶19 American's ripeness argument, however, is actually grounded in corporate succession law as opposed to being a jurisdictional question. American frames the threshold issue as being whether Trinity I actually ceased to exist— which would trigger the need to determine the successor organization—since

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

7

Trinity I had only changed its corporate name, not its corporate identity. American contends that because the change was solely to its corporate name, there was no need to determine a successor organization, and thus the trial court's determination that Trinity II is the successor organization of Trinity I was erroneous. We agree.

¶20 Basic law relating to corporate succession indicates that there is no successor organization in this case, because Trinity I's name change to American did not render it a "new" corporation:

> A change in the name of a corporation does not constitute a reorganization of the corporation....
>
> A mere change in the name of a corporation generally does not destroy the identity of the corporation, nor in any way affect its rights and liabilities. A change of name by a corporation has no more effect upon the identity of the corporation than a change of name by a natural person has upon the identity of such person. It is the same corporation with a different name.

*McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.*, 2004 WI App 221, ¶17, 277 Wis. 2d 801, 692 N.W.2d 247 (citation omitted). Put another way, "a corporation 'ordinarily continues existing unless there is a fixed period of existence which has lapsed, the corporation has been voluntarily dissolved, or the state has in some proper way taken away the corporate life.'" *Id.* (citation omitted). None of those dissolution options apply here.

¶21 Moreover, it is undisputed that American operates under the same tax identification number originally assigned by the Internal Revenue Service to Trinity I; Trinity II uses a different tax identification number. Regardless of the fact that Howard is not involved with American, that corporate entity remains the same as Trinity I.

¶22     Trinity II asks that we ignore corporate succession law and focus instead on Larson's intent in establishing the funds through the Trust. Specifically, Trinity II argues that Trinity I no longer exists because American is not operating in the same manner that Trinity I did with regard to dance performances, classes, and the like.  Therefore, Trinity II asserts that American does not fulfill the charitable purpose stated in the Trust and, as a result, a latent ambiguity exists.

¶23     Furthermore, Trinity II contends that since it is a dance company also founded by Howard and is operating in the manner contemplated by Larson when the Trust was established, the *cy pres* doctrine can be invoked to ensure that Larson's wishes are fulfilled by naming Trinity II as the recipient of the fund. Trinity II relies on ***Bletsch v. Barth***, in which our supreme court explained the *cy pres* doctrine:  "'when a charitable purpose cannot be fulfilled according to its terms, equity will attempt to do the next best similar charitable thing.'" ***Id.***, 25 Wis. 2d 40, 45, 130 N.W.2d 275 (1964) (citation omitted).

¶24     In our review of trust provisions, the language of the trust "should be construed so as to give effect to the subjective intent of the settlor." *See **State v. Barr***, 78 Wis. 2d 254, 258, 253 N.W.2d 901 (1977).  "Where there is no ambiguity inherent in the trust document, that intention may be ascertained from the language of the trust document itself, considered in light of the circumstances surrounding its drafting." ***Id.***  The interpretation of trust provisions is a question of law that we review *de novo*. *See **Furmanski v. Furmanski***, 196 Wis. 2d 210, 214, 538 N.W.2d 566 (Ct. App. 1995).

¶25     We disagree with Trinity II's assessment that an ambiguity exists in the Trust.  The plain language of the Trust states that the intended recipient of the

9

funds is Trinity I or a successor organization. Although Trinity I changed its name to American, it is still the same corporate entity—the law pertaining to corporate succession is very clear as to that point. *See McNally CPA's & Consultants*, 277 Wis. 2d 801, ¶17. Therefore, the "successor organization" provision of the trust is not applicable here.

¶26 The Trust further states that if Trinity I—now American—does not meet the requirements for distribution of the funds, the contingent beneficiary is the University of Chicago. There is no provision in the Trust that allows for another dance company—even a company with the same founder as Trinity I—to make a claim to the fund in the event that Trinity I is not compliant with the Trust's requirements. Trinity II's argument infers that Howard was the true intended recipient of the fund because he created Trinity I, and thus the fund should follow him to his new company, Trinity II. However, the Trust provided for distribution to Trinity I, the corporate entity—not Howard. These terms, as set forth in the Trust, are not ambiguous.

¶27 If there is no ambiguity in the text of a trust, "extrinsic evidence is inadmissible for the purpose of determining intent." *Krause v. Krause*, 14 Wis. 2d 490, 496, 111 N.W.2d 413 (1961). Therefore, the trial court erred in basing its decision on extrinsic evidence received at trial regarding the employment structure and production status of each company, rather than on the unambiguous language of the Trust. *See Barr*, 78 Wis. 2d at 258. That language states that Trinity I—now American—is the recipient of the fund established in the Trust, as long as American complies with the requirements relating to distribution.

¶28 The question of compliance with those requirements remains with the Foundation, as clearly stated in the Trust. This responsibility of the

Foundation was recognized and acknowledged by the trial court; as such, it made no findings with regard to compliance—by either American or Trinity II—with the requirements of the Trust.

¶29    In sum, the trial court did not apply the proper standard of law to the relevant facts in making its declaratory judgment. *See **Hefty***, 312 Wis. 2d 530, ¶28.    We therefore reverse the order naming Trinity II as the successor organization to Trinity I, and remand this matter with directions to enter an order declaring that American is the beneficiary of the fund, subject to the requirements of the Trust, with the Foundation to determine compliance with those requirements as directed in the Trust.

*By the Court.*—Order reversed and caused remanded with directions.

Not recommended for publication in the official reports.