PAULSON, Justice.
 

 On January 15,1980, the County Court of Grand Forks County granted the petition of the personal representative of the estate of Orell McGuire to sell assets of a testamentary trust to pay estate taxes. The District Court of Grand Forks County affirmed the county court’s order on June 10, 1981. Henry B. McGuire appeals from the district court’s order. We affirm.
 

 Orell McGuire died on January 19, 1977. She left a will dated October 11, 1971, which had been drafted by her brother, Joseph R. McGuire. The will named Joseph R. McGuire as personal representative of the estate and devised Orell McGuire’s property to her surviving brother and sister, Joseph R. McGuire and Merle Gaffney, and to her surviving nieces and nephews. The will directed that the property be distributed as follows: $15,000 and all furniture, fixtures, and jewelry to Merle Gaffney; farmland located in Grand Forks County and Walsh County to Joseph R. McGuire; residential property in Grand Forks and a quarter section of land in Grand Forks County to Lawrence D. Elfelt, Jr., John O’Brien Elfelt, and James S. Elfelt, the sons of Orell McGuire’s deceased sister, Helen Elfelt; and 660 shares of Guirell Corporation common stock to Joseph R. McGuire in trust, for the benefit of Eric L. McGuire, Bernard J. McGuire, Regis P. McGuire, and Henry B. McGuire, the sons of Orell McGuire’s deceased brother, Daniel C. McGuire.
 
 [1]
 
 The residue of her estate was to be distributed one-third to the children of Daniel C. McGuire, one-third to the children of Helen Elfelt, and one-third to the children of Joseph R. McGuire.
 

 The dispute in this case arose over the interpretation of Article Eight of the will, which provides as follows:
 

 “EIGHTH: I specifically direct that all taxes, including state inheritance taxes and federal estate taxes, which may be chargeable against my estate or against the gifts, devises and bequests and interests under this Will shall be paid out of the general assets of the Trust Estate, it being my intention that each and every gift, bequest, devise and interest under
 
 *849
 
 this Will shall be delivered to and taken by every devisee, legatee and beneficiary hereunder, in full and without deduction on account of any of said taxes.”
 

 On January 3, 1978, Joseph R. McGuire, as personal representative, petitioned the County Court of Grand Forks County for permission to liquidate the trust established in Article Six of the will in order to pay state and federal estate taxes. Henry B. McGuire, as one of the beneficiaries under the trust, filed an answer to the petition, alleging that Article Eight of the will was ambiguous and requesting the court to order that estate taxes be paid out of the residue or, in the alternative, that taxes be paid according to North Dakota’s tax apportionment statute, § 30.1-20-16(2) of the North Dakota Century Code.
 

 The county court held that Article Eight was not ambiguous and ordered that the personal representative’s petition to sell assets of the trust be granted. The order of the county court was appealed to district court. The district court, although finding that Article Eight of the will was ambiguous, held that it was the intent of the testatrix that the estate taxes be paid out of the assets of the Guirell Trust. The district court ordered that the personal representative’s petition be granted, and Henry McGuire appealed from the district court’s order.
 

 Two issues are presented on appeal.
 

 1. Did the district court err when it failed to apply § 30.1-20-16(2), N.D.C.C., the estate tax apportionment statute, after it found Article Eight of Orell McGuire’s will ambiguous?
 

 2. Was the district court’s finding that Orell McGuire intended that estate taxes be paid from the assets of the Guirell Trust clearly erroneous?
 

 I.
 

 Henry McGuire first contends that the district court erred in failing to apply the estate tax apportionment statute, § 30.1-20-16(2), N.D.C.C., after it had found that Article Eight of the will was ambiguous. Section 30.1-20-16(2) provides:
 

 “2. Unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are to be used for that purpose. If the decedent’s will directs a method of apportionment of tax different from the method described in this title, the method described in the will controls.”
 

 Henry points to our decision in
 
 Bushee v. Bushee,
 
 303 N.W.2d 320 (N.D.1981), to support his position. In
 
 Bushee,
 
 we held that estate taxes will be paid according to the apportionment statute unless the decedent’s will directs in clear and unambiguous language a method of apportionment different from that provided in the statute. Henry contends that the district court was required by our holding in
 
 Bushee
 
 to apply the apportionment statute once it determined that Article Eight of the will was ambiguous. We conclude, however, that
 
 Bushee
 
 is clearly distinguishable from the instant case.
 

 In
 
 Bushee,
 
 the decedent’s will directed that his “land, stocks, bonds, Machinery, buildings, or equipment or anything else which may be connected with my business interests, be sold or otherwise disposed of, and that all of my debts, taxes etc; be paid in full, from revenue from such sale.”
 
 Bushee, supra,
 
 303 N.W.2d at 321. We held that the decedent’s will did not clearly and unambiguously direct a method of apportioning estate taxes different from that provided for in the statute because the phrase “all of my ... taxes” did not necessarily refer to estate taxes:
 

 “The phrase ‘all of my ... taxes’ might also be rationally construed as a direction by the testator to pay all personal and business taxes owing by the decedent at the time of his death without any intent by the testator to thereby direct payment of estate taxes. There is no express ref
 
 *850
 
 erence in the will to ‘estate taxes’ nor is there an express direction against the apportionment of estate taxes. We conclude that the will does not clearly and unambiguously direct a method of apportionment of estate taxes different from the method provided by statute. Accordingly, we hold that the district court did not err in its determination that the provisions of the apportionment statute, Section 30.1-20-16, N.D.C.C., are applicable for the payment of estate taxes of the decedent’s estate.”
 
 Bushee, supra,
 
 303 N.W.2d at 322.
 

 Our holding in
 
 Bushee
 
 was based upon the fact that the will did not clearly and unambiguously evidence an
 
 intent
 
 by the decedent to apportion estate taxes in a manner different from the statute:
 

 “Section 30.1-20-16, N.D.C.C., provides a method of apportioning estate tax by which every part of the estate contributing to the creation of the tax liability bears its fair share of the tax burden. Upon construing a will, this Court will not lightly infer an intent by the testator to exonerate certain estate property from its fair share of the estate tax burden. The estate taxes will be paid according to the apportionment statute unless the decedent’s will directs in clear and Unambiguous language a method of apportionment different from that provided by the statute.”
 
 Bushee, supra,
 
 303 N.W.2d at 321-322.
 

 Our holding in
 
 Bushee
 
 requires that estate taxes be apportioned according to the statute when the language of the will does not clearly and unambiguously evidence an intent on the part of the testator that estate taxes be apportioned in a manner different from the statute.
 

 The situation in this case is clearly distinguishable from that in
 
 Bushee.
 
 Orell McGuire’s will clearly and unambiguously expresses her intent that estate taxes are to be paid in a manner different from that in the statute. The language of Article Eight of Orell McGuire’s will could not be any clearer on this point:
 

 “I
 
 specifically direct
 
 that all taxes,
 
 including state inheritance taxes and federal estate taxes,
 
 which may be chargeable against my estate or against the gifts, devises and bequests and interests under this Will
 
 shall be paid
 
 out of the general assets of the Trust Estate.” [Emphasis added.]
 

 Because the ambiguity found by the district court in Article Eight of Orell McGuire’s will relates to the specific method to be used in apportioning the estate taxes, rather than to her
 
 intent
 
 that they be paid in some manner other than that provided for in the statute, our holding in
 
 Bushee
 
 is not controlling. We conclude that the district court did not err when it refused to apply the apportionment statute.
 

 II.
 

 Having determined that it was not necessary to apply the estate tax apportionment statute, we must next determine whether or not the district court erred in finding that Orell McGuire intended that estate taxes be paid from the assets of the Guirell Trust. Henry McGuire contends that the extrinsic evidence admitted by the district court establishes that Orell McGuire intended that the residual estate bear the estate taxes.
 

 The district court’s finding that it was Orell McGuire’s intention that estate taxes be paid out of the assets of the Gui-rell Trust is a finding of fact, and will not be set aside on appeal unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. We have previously noted that a finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.
 
 Kasper v. Provident Life Insurance Co.,
 
 285 N.W.2d 548, 551 (N.D.1979);
 
 Bladow v. Bladow,
 
 249 N.W.2d 917, 920 (N.D.1977);
 
 Eakman v. Robb,
 
 237 N.W.2d 423, 429 (N.D.1975).
 

 In reviewing the district court’s finding, we note that § 30.1-09-03, N.D. C.C., provides that the “intention of a testator
 
 as expressed in his will
 
 controls the
 
 *851
 
 legal effect of his dispositions.” In construing ambiguous provisions of a will, the court may only interpret the language of the will in the light of surrounding circumstances; it may not rewrite the will on the basis of extrinsic evidence of the testator’s intent. As noted by the Arizona Court of Appeals in
 
 Matter of Estate of Blacksill,
 
 124 Ariz. 130, 602 P.2d 511, 513 (Ct.App.1979), extrinsic evidence is admissible “only to show what the testator meant by what he said, not to show what he intended to say.” The court in
 
 Blacksill
 
 went on to hold that, even in cases of clear draftsman’s error, courts may not reform the will.
 

 In the instant case, we conclude that the district court’s finding that Orell McGuire intended that the Guirell Trust bear the estate taxes is not clearly erroneous. As noted above, the court, in construing the will, is to interpret the language of the will in light of the surrounding circumstances. We find ample evidence to support the district court’s finding that the language of the will, when interpreted in the light of surrounding circumstances, evidenced an intent that estate taxes were to be borne by the Guirell Trust.
 

 The district court pointed to several factors which support its finding. Orell McGuire’s will specifically directed that all estate taxes be paid out of the general assets of the “trust estate.” Henry McGuire argues that the phrase “trust estate” is not defined in the will and that the extrinsic evidence establishes that Orell McGuire intended that estate taxes be paid out of the residual estate. Extrinsic evidence is only admissible, however, to explain what the testator meant by what he said, not to show what he intended to say. Thus, Henry must establish that Orell McGuire intended the term “trust estate” to mean the residuary estate when she executed her will.
 

 In determining that the phrase “trust estate,” as used in Orell McGuire’s will, meant the Guirell Trust, the district court noted that the term “trust estate” also appears in Article Six of Orell McGuire’s will, which sets forth the provisions of the Gui-rell Trust. When a phrase or term occurs more than once in a will, there is a strong inference that they are used in the same sense each time they appear, unless a contrary intention appears in the context, or unless the words apply to different subjects. 80 Am.Jur.2d
 
 Wills
 
 § 1159 (1975).
 

 Another factor noted by the district court was the sequence of the provisions in the will. Article Six sets forth the provisions of the Guirell Trust; Article Seven provides for disbursement of the corpus upon termination of the Guirell Trust; and Article Eight provides for payment of estate taxes from the “trust estate.” A logical, sequential reading of the will supports the district court’s conclusion that the phrase “trust estate” in Article Eight refers to the Guirell Trust.
 

 Finally, the district court noted that Orell McGuire had made substantial gifts of Gui-rell Corporation stock to Henry McGuire and his brothers outside of the will. The court noted that Orell McGuire could have considered the value of these gifts, coupled with the interest in the residuary estate devised to Henry and his brothers, when she provided that estate taxes be borne by the Guirell Trust.
 

 Henry further contends that the second clause of Article Eight of the will is “crystal clear,” and, because it is in conflict with the first clause directing that estate taxes be paid from the trust estate, it should control. The second clause of Article Eight provides: “it being my intention that each and every gift, bequest, devise and interest under this will shall be delivered to and taken by every devisee, legatee and beneficiary hereunder, in full and without deduction on account of any of said taxes.” Henry argues that this language expressed Orell McGuire’s intent that the residuary, and not the trust, was to bear the estate taxes, because Henry and his brothers are expressly referred to as “beneficiaries” in Articles Six and Seven. Henry has failed to carry this argument to its logical conclusion, however: if the second clause of Article Eight is followed literally, estate taxes may not be paid from
 
 any
 
 part of the
 
 *852
 
 estate. The beneficiaries under Article Ten of the will, which devises the residue of the estate, are also included in the description “each and every devisee, legatee and beneficiary.” Therefore, this statement of Orell McGuire’s intent does not, as Henry claims, support the conclusion that Orell McGuire intended that estate taxes be paid out of the residue of her estate.
 

 Henry also argues that Orell McGuire’s written instructions to her brother, Joseph McGuire, indicate her intent to have estate taxes paid from the residue of the estate. In a letter to her brother, Orell McGuire expressed her wish to have the residue of the estate distributed
 
 per stirpes,
 
 and explained that it had occurred to her that “net ‘residue’ is diminished due to tax take determined by value of Guirell stock.” Henry asserts that this indicates an error by the draftsman in preparing Article Eight, and that Orell McGuire’s intent was that the residue would bear the burden of the estate taxes. No such intent, however, appears on the face of the will. The parties agree that Orell McGuire was an astute businesswoman,
 
 [2]
 
 and there is every indication that she fully understood her testamentary plan. Orell McGuire executed her will with a provision that estate taxes be paid from the “trust estate.” A period of over five years elapsed between the execution of the will and her death, and she never made an effort to change its provisions. We must assume that at the time Orell McGuire executed her will she had decided that the estate taxes were to be borne by the Guirell Trust.
 

 Henry also asserts that Orell McGuire’s purchase of United States Treasury Bonds which were redeemable at par in payment of federal estate taxes evidenced her intent that the residue bear estate taxes. These bonds, commonly called “flower bonds,” trade at a deep discount and carry a low interest rate. Henry contends that Orell McGuire must have intended the residue to bear the estate taxes because these “flower bonds” were not specifically devised, and have become part of the residuary estate. The purchase of flower bonds and their inclusion in the residuary estate, however, are inconclusive of such an intent in light of the specific direction in the will that estate taxes be paid from the assets of the trust estate.
 

 Finally, Henry argues that payment of estate taxes from the assets of the Guirell Trust will destroy the trust. The assessed value of the Guirell Corporation stock, which is the only asset of the Guirell Trust, is $258,634.20. State and federal estate taxes have been set at $237,216. Although there is a $21,000 surplus based upon those figures, Henry claims that a redemption of the stock would not produce enough revenue to pay the taxes and would completely destroy the trust. Henry also asserts that there is no market for the stock and that a sale of the stock is therefore highly unlikely. The district court noted, however, that Guirell stock has never been offered for sale, and it is unknown whether a market for the stock exists. Although any sale or redemption of the stock will greatly diminish the value of the trust, this does not conclusively indicate an intent on the part of Orell McGuire that estate taxes be borne by the residue rather than by the Guirell Trust.
 

 We conclude that the district court’s finding that Orell McGuire intended that estate taxes be paid out of the assets of the Gui-rell Trust was not clearly erroneous. The order of the district court granting the personal representative’s petition to sell assets of the trust to pay estate taxes is affirmed.
 

 ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.
 

 [1]
 

 . For the sake of clarity, we will refer to the trust established by Articles Six and Seven of Orell McGuire’s will as the “Guirell Trust.”
 

 [2]
 

 . The record indicates that Orell McGuire was a Phi Beta Kappa, and had been a teacher for most of her life. She had returned to North Dakota after her mother’s death to manage her father’s financial affairs, and during her life-tíme amassed an estate with a value of over $729,000, including real estate holdings, treasury notes, numerous stocks and bonds, and several bank accounts.