In the Matter of the Administration by Franklin G. LARSON and Edson Germain Larson of the Trust Created by Enoch G. Larson Dated October 14, 1968 and of the Trust Created by Julia L. Larson Dated October 14, 1968.

Civ. Nos. 10486, 10487.

Supreme Court of North Dakota.

Dec. 22, 1983.

William J. Brudvik, Mayville, for appellant Edson Germain Larson; argued by William J. Brudvik, Mayville.

Nilles, Hansen, Magill & Davies, Fargo, for appellee Franklin G. Larson; argued by J. Gerald Nilles, Fargo.

ERICKSTAD, Chief Justice.

This case involves a disagreement between two co-trustees, Franklin G. Larson and Edson G. Larson, as to the manner of dividing farmland held in the Enoch G. Larson and the Julia L. Larson trusts. Franklin and two other trust beneficiaries, Carol Jean Carlisle and Elaine Kievman, petitioned the district court to divide the trust farmland into five separate parcels and to allocate the trust assets, including the divided farmland, to five trust shares, one for each beneficiary. Edson opposed the petition on the ground that the trust settlors intended the trustees to allocate equal undivided interests in the farmland rather than individual tracts to each trust

share. The district court concluded that the trust instruments clearly and unambiguously:

"... provide for the division of the trust estate into 5 separate trusts and that such division includes whatever property, including specific farmland to be allocated to each trust share."

Consistent with that interpretation the court entered an order, dated April 27, 1983, by which it divided the trust farmland into five separate parcels and allocated the divided trust assets to each of the five designated trust shares.

Edson filed this appeal from the court's order through which he has raised one issue:

"Did the trial court err in ordering the division of the Enoch G. Larson and Julia L. Larson Trusts into five separate trusts *and* the allocation of specific tracts of farmland to each trust so created?"

When the district court was petitioned to order a division of the property it was faced with a situation where the co-trustees, Edson and Franklin, while in agreement that the trust instruments directed them to place the trust assets into five trust shares, could not agree on the method of allocating the trust farmland. Faced with that situation, the district court allocated specific tracts of farmland to each of the five trust shares. We are asked to determine whether or not the district court acted properly and within its authority. We conclude that it did.

■ Section 59–02–11, N.D.C.C., provides that where there are several co-trustees "all must unite in any act to bind the trust property, unless the declaration of trust provides otherwise." Section 59–02–12, N.D.C.C., provides that a discretionary power conferred upon a trustee "shall be controlled by the district court if not reasonably exercised, unless an absolute discretion clearly is conferred by the declaration of trust." Under Section 59–04–02, N.D.C.C., the district court, upon proper petition, has the authority to supervise the administration of a trust. We believe the

foregoing provisions, when construed together, authorize the district court to direct an appropriate course of action, in accordance with the terms of the trust, when the co-trustees cannot agree on the course to follow.

The situation in this case is analogous to that in *Conway v. Parker*, 250 N.W.2d 266 (N.D.1977), wherein one co-executrix wanted to execute a power of attorney and the other did not. In affirming the district court's order requiring the co-executrixes to execute the power of attorney, this Court stated in relevant part:

"The statute clearly requires joint action by corepresentatives whenever circumstances permit. Such joint action was not present or forthcoming from Parker and Conway. The district court was confronted with the question of what, if any, alternatives were available aside from continued impasse.

\*　\*　\*　\*　\*　\*

"We hold that the district court was authorized to and, properly, did require that a power of attorney be executed to Brady & Co., notwithstanding lack of concurrence on this issue by the corepresentatives. Although joint action is the goal of the Uniform Probate Code, as evidenced by § 30.1–18–17, NDCC, set out previously, failure of the representatives to agree cannot be allowed to result in stalemate of administration of the estate." (Footnote omitted). 250 N.W.2d at 271–72.

In *Conway, supra*, we held that the district court had authority to resolve a dispute between co-executrixes on a matter of estate administration, under the Uniform Probate Code provisions authorizing the court to control the actions of personal representatives to prevent the jeopardizing of another's interest in the estate. Similarly, we conclude that the authority vested in the district court to control trust administration under Sections 59–02–12, N.D.C.C., and 59–04–02, N.D.C.C., permits the district court to resolve a stalemate situation caused by the inability of co-trustees to act

in concert on a matter of trust administration.

Edson does not dispute the court's decision to create five separate trust shares, one for each beneficiary, nor does Edson dispute the particular share allocations which were designated by the court to each of the beneficiaries. The sole basis for Edson's appeal is the decision of the court to divide and allocate separate tracts of farmland to each trust share rather than to allocate equal undivided interests in the farmland to the five trust shares. The following trust provisions are relevant to that issue:

"The Trustees shall divide whatever constitutes the FAMILY TRUST[1] into as many separate shares, hereinafter for convenience called 'Trust Shares', as nearly equal in value and income yield as possible, as there are children of the Settlor who survive him (her) and deceased children of the Settlor having issue who survive him (her), ...

"... the Trustees ... are vested with the following additional powers and discretions:

> \*　　\*　　\*　　\*　　\*　　\*

"To hold all or any part of the property of any of the Trust Shares or separate shares thereof created hereunder undivided as a common fund, making distributions of income and principal in the same manner, to the same persons and in the same proportions as if a physical division had been made.

> \*　　\*　　\*　　\*　　\*　　\*

"To make distribution of the Trust Estate, or any portion thereof, in kind and to cause any share to be composed of cash, property or undivided fractional shares in property different in kind from any other share."

The primary objective in construing a trust instrument is to ascertain the intent of the trustor. *E.g., Northwestern National Bank of Minneapolis v. Simons,* 308 Minn. 243, 242 N.W.2d 78 (1976). Where there is no inherent ambiguity in the trust instrument, the trustor's intent may be ascertained from the trust document itself. *E.g., Matter of Estate of Barr,* 78 Wis.2d 254, 253 N.W.2d 901 (1977). Having reviewed the trust instruments, we conclude that they unambiguously provide that, in dividing the trust assets into five separate trust shares, the trustees could, within their discretion, place all or any part of the trust assets, including the farmland, into the trust shares either as undivided fractional interests or as separate and specifically identified parcels.

Edson asserts that the following amendment to each of the trust instruments shows that the trustors intended the farmland to be placed into trust shares only as undivided fractional interests:

"(1) If it is the wish of my children, ELAINE DELORIS KIEVMAN, CAROL JEAN CARLISLE, EDSON GERMAIN LARSON, ROBERT L. LARSON and FRANKLIN G. LARSON or the representative of their estate after my death, and their agreeing all together that all or any part of the land described in Exhibit 'A' be sold, then FRANKLIN G. LARSON and EDSON G. LARSON are to present said wish in writing to the Co-Trustee, the First National Bank and Trust Company of Fargo[2] and the Co-Trustees together are to carry out this wish according to the terms as set forth in that agreement dated October 14, 1968 for sale of land and the proceeds of said sale distributed as soon as possible to my above named children or their estates in

---

**1.** Article II(B)(2) of the Julia L. Larson trust substitutes the phrase "Trust Estate" in place of the phrase "FAMILY TRUST" under Article II(B)(2)(b) of the Enoch G. Larson trust. The distinction is irrelevant to the disposition of this appeal.

**2.** During December, 1977, the First Northwestern Trust Company of North Dakota was substituted as corporate trustee in place of the First National Bank and Trust Company of Fargo. During December, 1981, First Northwestern Trust Company of North Dakota resigned as trustee leaving only Franklin and Edson as co-trustees.

equal amounts either as said land is sold in part or its entirety."

We are unpersuaded that the foregoing language in any way extinguishes or limits the discretion of the trustees as to the method of allocating the farmland to each of the five trust shares. It merely provides that if the five named beneficiaries agree to sell all or any part of the farmland the trustees must sell the farmland and distribute the proceeds equally. Although it is perhaps unlikely that all of the beneficiaries would agree to sell the farmland and distribute the proceeds equally if the trustees have previously allocated specific tracts of farmland to each of the trust shares, the trust amendments do not prohibit that type of allocation nor do they require the beneficiaries to reach an agreement to sell any of the farmland.

We hold that the district court acted within its authority and in accordance with the trust provisions when it allocated specific tracts of trust farmland to the five trust shares. Accordingly, the order of the district court is affirmed.

SAND, GIERKE and PEDERSON, JJ., concur.

VANDE WALLE, J., concurs in the result.