Herman HECKER, Appellant,

v.

STARK COUNTY SOCIAL SERVICE BOARD and North Dakota Department of Human Services, Appellees.

Civ. No. 940180.

Supreme Court of North Dakota.

Dec. 20, 1994.

Opinion Denying Rehearing Feb. 8, 1995.

We hold she may, and we reverse and remand.

## FACTS

The facts are not in dispute. Herman Hecker is a single, fifty-four-year-old, developmentally disabled male residing in a group home. Herman is the sole beneficiary of a trust [Hecker trust] established in 1984 by his now-deceased mother, Wilhelmina Hecker. The trust agreement was amended and restated in 1987 and describes the grantor's intent and the trustee's discretion as follows:

"III.

.          .          .          .          .

"(a) *Introduction.* It is the Grantor's primary concern in creating this Trust that it continue in existence as a supplemental fund to public assistance for her handicapped child, Herman Hecker, hereinafter referred to as the 'beneficiary', throughout his life as she would provide if she were personally present.[1] . . .

"(b) *Special Needs.* The Trustee shall pay to or apply to the benefit of the beneficiary, for his lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in the Trustee's sole discretion may from time to time deem necessary or advisable for the satisfaction of the beneficiary's special needs. Any income not distributed shall be added to principal. As used in this instrument, 'special needs' refers to the requisites for maintaining the beneficiary's good health, safety, and welfare when, in the sole discretion of the Trustee, such requisites are not deemed provided by any public agency, office, or department of the State of North Dakota, or of any other state, or of the United States. 'Special needs' include, but are not limited to, medical and dental expenses, clothing and equipment, programs of training, education, treatment, and essential dietary needs to the extent that such needs are not provided by any government entity."

Gordon W. Schnell of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellant.

Jean R. Mullen, Asst. Atty. Gen., Bismarck, for appellee.

December 20, 1994.

LEVINE, Justice.

Herman Hecker appeals from an order affirming the Stark County Social Service Board's denial of medicaid benefits. The appeal presents the question whether a parent may establish a trust to benefit her adult developmentally disabled son which provides funds for his special needs that are not provided for by public assistance without making him ineligible to receive medicaid benefits.

---

1. The trust also contains a spendthrift clause which prevents the beneficiary from assigning his interest to creditors; however, that provision is not at issue in this appeal.

In late June 1993, Herman, through his brother, guardian, and trustee of the Hecker trust, Peter Hecker, applied to the Stark County Social Service Board [Board] for medical assistance benefits through the State-administered medicaid program. The Board denied his application, based on its determination that the value of Herman's assets exceeded the prescribed maximum of $3,000.00. *See* NDAC § 75–02–02.1–26. The Board included the full value of the trust corpus,[2] approximately $81,000, in computing the value of Herman's assets.

Herman appealed from the Board's denial to the North Dakota Department of Human Services [Department]. The Department, after a hearing, upheld the Board's denial of medicaid benefits. The hearing officer found that the trust created by Herman's mother was a support trust and, consequently, "deemed" to be available to Herman as a means of support. NDAC § 75–02–02.1–31(3).

Herman appealed from the Department's order to the district court, which affirmed the decision of the Department, holding that the trust, created by Herman's mother, is a support trust and, therefore, deemed an available asset pursuant to section 75–02–02.1–31(3)(b) of the North Dakota Administrative Code.

On appeal to this court, Herman argues that the Department's finding that the trust is a support trust is in error. He argues that the trust is a discretionary trust, not a support trust and, therefore, is not an available asset for determining medicaid eligibility. The Department contends that at least one purpose of the trust is Herman's support and, therefore, it is a support trust within the meaning of the Department's regulations. Consequently, the Department argues, the full value of the corpus of the trust may be considered available to Herman for his support and considered in determining his eligibility for medicaid.

Three issues are presented in this appeal: 1) whether the Hecker trust is a support or a discretionary trust; 2) whether the Department may, by administrative regulation, overrule a trust settlor's intent; and 3) if not, whether the Hecker trust violates federal and North Dakota public policy.

## NATURE OF THE TRUST

■ When construing a trust instrument, our primary objective is to ascertain the settlor's intent. *Matter of Larson,* 341 N.W.2d 627 (N.D.1983). Intent is a question of fact. *Matter of Estate of Klein,* 434 N.W.2d 560 (N.D.1989); *McGuire v. Gaffney,* 314 N.W.2d 851 (N.D.1982). As this is an appeal from an administrative agency decision, we review the record and the determination of the agency, not that of the district court. *Bohac v. Graham,* 424 N.W.2d 144 (N.D.1988). We will affirm the finding of the agency unless its factual conclusions are not supported by a preponderance of the evidence. *Hins v. Lucas Western,* 484 N.W.2d 491 (N.D.1992). In deciding whether there is a preponderance of the evidence in support of the agency's findings of fact, "[w]e determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979).

■ A support trust is one which essentially provides that the trustee "shall pay or apply only so much of the income and principal or either as is necessary for the education or support of a beneficiary." Restatement (Second) of Trusts § 128 cmt. 1 (1959). *See Bohac,* 424 N.W.2d 144. A support trust permits a beneficiary to compel distributions of income, corpus, or both, for expenses necessary for the beneficiary's support. *Id.; Chenot v. Bordeleau,* 561 A.2d 891 (R.I.1989); *In the Matter of Leona Carlisle Trust,* 498 N.W.2d 260 (Minn.App.1993). If the Hecker trust reasonably could have been interpreted to be a support trust, then the Department may consider it as an asset when evaluating Herman's eligibility for assistance. *See* NDAC § 75–02–02.1–31(3). *See also Bohac,* 424 N.W.2d 144. *Accord Chenot,* 561 A.2d 891.

---

**2.** For purposes of this appeal, we are concerned only with the value of the trust corpus as a disqualifying asset. Neither party raises the issue of distributions of trust income to Hecker.

A discretionary trust, on the other hand, is one that grants the trustee "uncontrolled discretion over payment to the beneficiary." *Bohac*, 424 N.W.2d at 146. Restatement (Second) of Trusts § 128 cmt. d (1959); Scott on Trusts § 155 (1987). References to the "general welfare" of the beneficiary indicate a discretionary trust. *Id.* Because the ability to compel distributions from the trust is not available to the beneficiary of a discretionary trust, only those distributions of trust income or corpus actually made by the trustee may be taken into account by the Department. *See* NDAC § 75–02–02.1–31(4).

Whether a trust is a support or a discretionary trust depends on the settlor's intent. *Bohac*, 424 N.W.2d at 146. *See also* Restatement (Second) of Trusts § 128. Our duty is to uphold and implement the settlor's intent to the extent it does not contravene public policy. *Leona Carlisle Trust*, 498 N.W.2d 260; *Tidrow v. Dir., Mo. State Div. of Family Services*, 688 S.W.2d 9 (Mo.App. 1985). When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself. *Bohac*, 424 N.W.2d 144. Whether or not a trust is ambiguous is a question of law, fully reviewable on appeal. *Klein*, 434 N.W.2d 560.

The Hecker trust instrument authorizes the trustee to "pay to or apply to the benefit of [Herman], for his lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in the Trustee's *sole discretion* may from time to time deem necessary or advisable for the satisfaction of [Herman's] special needs." (*Emphasis* added.) The trust language defines "special needs" as "the requisites for maintaining the beneficiary's good health, safety, and welfare when, in the *sole discretion* of the Trustee, such requisites are not deemed provided by any public agency...." (*Emphasis* added.) Although the Hecker trust's definition of special needs includes medical and dental expenses, clothing, and education, items associated with support of a beneficiary, this language does not limit the trustee's absolute discretionary power. *See Chenot*, 561 A.2d 891. In fact, the trust, in contrast to a general support trust, permits the trustee, in his sole discretion, to invade the trust when and if the trustee deems it necessary for Herman's welfare. *Compare Bohac. v. Graham*, 424 N.W.2d 144 (N.D. 1988). At all times, the trustee retains the discretionary power to determine when and to what extent that power will be exercised. *See Lineback by Hutchens v. Stout*, 79 N.C.App. 292, 339 S.E.2d 103 (1986); *Leona Carlisle Trust*, 498 N.W.2d 260. Indeed, the trustee has the power to make no distribution at all to Herman and Herman cannot compel the trustee to make distributions under the terms of the trust instrument. The ability to discriminate against one or all beneficiaries is characteristic of a discretionary trust. *Zeoli v. Comm'r of Soc. Serv.*, 179 Conn. 83, 425 A.2d 553 (1979); *In re Johannes Trust*, 191 Mich.App. 514, 479 N.W.2d 25 (1991).

Other plain language in the trust instrument demonstrates Wilhelmina Hecker's clear intent that the trust not be used for Herman's primary support. The trust unequivocally states that it is to be "a supplemental fund to public assistance," and that

"[i]t is the Grantor's express intent that because the beneficiary is developmentally disabled and unable to support and maintain himself independently, the Trustee shall, in the exercise of the Trustee's best judgment, seek support and maintenance from all available public resources, including the appropriate Regional Center for the developmentally disabled. In making distributions for the special needs defined herein, [the] Trustee shall take into consideration the applicable resource limitations of the public assistance programs for which the beneficiary is eligible."

This language plainly indicates an intent not to provide primary support or maintenance for the beneficiary. *Compare Bohac*, 424 N.W.2d 144. Rather, this language is consistent with what a number of jurisdictions now refer to as a special needs trust or supplemental needs trust [SNT]. *See* Minn.Stat. § 501B.89; *Leona Carlisle Trust*, 498 N.W.2d 260; *Tidrow*, 688 S.W.2d 9; *Trust Co. of Okla. v. State ex rel. Dept. of Human Services*, 825 P.2d 1295 (Okl.1991), *cert. denied* —— U.S. ——, 113 S.Ct. 300, 121

L.Ed.2d 224 (1992). *See also* Mayer Y. Silber, The Effect of a Trust on the Eligibility or Liability of the Trust Beneficiary for Public Assistance, 26 Real Prop. & Tr. J. 133 (1991).

Special needs trusts and supplemental needs trusts are recognized as means for individuals to provide for persons who do not have the ability to be self-supporting and to whom the individuals owe no duty of support. *See* Silber, *supra.* Both supplemental needs trusts and special needs trusts require that public assistance be used for the primary support of the beneficiary with the trustees to provide only for the beneficiary's particular "special" or additional needs that public assistance does not provide. *See, e.g., Young v. Dept. of Public Welfare*, 416 Mass. 629, 624 N.E.2d 110 (1993). The majority of jurisdictions facing this issue holds that these types of trusts do not disqualify a beneficiary from receiving public assistance if the settlor's intention is clear that trust distributions are only to supplement, and not supplant, public assistance benefits. *See, e.g., Application of Garbow*, 155 Misc.2d 1001, 591 N.Y.S.2d 754 (Sur.1992).

We conclude that Wilhelmina Hecker unambiguously created a discretionary trust to be used as a secondary or supplemental source of income for Herman's needs which are not met by public assistance. The Department's finding that it is a support trust is contradicted by the plain language of the trust instrument and thus is not supported by a preponderance of the evidence.

## EFFECT OF ADMINISTRATIVE REGULATION

The Department contends that NDAC § 75–02–02.1–31(3) negates the plain language of the trust and Wilhelmina Hecker's clear intent and is the determining factor in interpreting a trust for purposes of medicaid eligibility.

The Department's regulation says:

"a. For purposes of this subsection, 'support trust' means a trust which has, as a purpose, the provision of support or care to a beneficiary. The purpose of a support trust is indicated by language such as 'to provide for the care, support, and maintenance of . . .'; 'to provide as necessary for the support of . . .'; or 'as my trustee may deem necessary for the support, maintenance, medical expenses, care, comfort, and general welfare'. No particular language is necessary, but words such as 'care', 'maintenance', 'medical needs', or 'support' are usually present. The term includes trusts which may also be called 'discretionary support trusts' or 'discretionary trusts', so long as support is a trust purpose. This subsection applies without regard to:

(1) Whether or not the support trust is irrevocable or is established for purposes other than to enable a beneficiary to qualify for medicaid or any other benefit program where availability of benefits requires the establishment of financial need; or

(2) Whether or not the discretion is actually exercised.

"(b) Except as provided in subdivisions c and d, the amount from a support trust deemed available to the beneficiary, the beneficiary's spouse, and the beneficiary's children is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the beneficiary, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the beneficiary." NDAC § 75–02–02.1–31(3)(a), (b). (Emphasis added.)

The Department argues that its regulation permits it to deem the entire corpus of the trust as available to Herman for his support.[3]

---

**3.** The Department defines "available assets" in the following manner:

"Only such assets as are actually available will be considered. Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available. Assets will be reasonably evaluated. A determination that an asset is deemed avail-

The Department contends that once a trust falls within its definition of a support trust, it is the applicant's burden to obtain a court order showing that the applicant has no legal ability to compel payments from the trust. *See Id.* at (3)(c).

Herman concedes that an applicant bears the burden of establishing eligibility for benefits. *See Wagner v. Sheridan Cty. Soc. Serv. Bd.,* 518 N.W.2d 724 (N.D.1994). However, he argues that the underlined portion of NDAC § 75–02–02.1–31(3) is void because it overrules judicial precedent and exceeds the rulemaking authority of the Department. We agree.

■■■■ The Department is authorized to promulgate eligibility standards for medical assistance benefits generally under NDCC § 50–06–16 and specifically under § 50–24.1–02(3). Properly promulgated administrative rules have the force and effect of law. NDCC § 28–32–03(3). However, an agency may not promulgate a rule or regulation which exceeds its statutory authority. *Berger v. State Personnel Board,* 502 N.W.2d 539 (N.D.1993). An administrative agency does not have the power, without statutory authority, to overrule or ignore judicial precedent. *Public Service Comm'n v. City of Williston,* 160 N.W.2d 534 (N.D.1968). *Accord National Labor Rel. Bd. v. Ashkenazy Prop. Management Corp.,* 817 F.2d 74 (9th Cir.1987); *Spraic v. U.S. R.R. Retirement Bd.,* 735 F.2d 1208 (9th Cir.1984); *Stieberger v. Sullivan,* 738 F.Supp. 716 (S.D.N.Y.1990). An agency regulation which exceeds the agency's authority is void and without force. *Berger,* 502 N.W.2d 539.

■■■ The underlined portion of NDAC § 75–02–02.1–31(3), which, as applied by the Department, overrules the explicit intent of Wilhelmina Hecker, is void because it supersedes our case law holding that the settlor's intent determines whether a trust is a support or a discretionary trust. *See Bohac v. Graham,* 424 N.W.2d 144 (N.D.1988); *Matter of Larson,* 341 N.W.2d 627 (N.D.1983); *In the Interest of McMullen,* 470 N.W.2d 196 (N.D.1991). The North Dakota legislature

has not enacted a statute permitting the Department to overrule our case law and consider as an available asset this type of discretionary trust. *Compare* Minn.Stat. § 501B.89, *infra.* We presume that the legislature knows judicial precedent and that its failure to amend or enact a statute authorizing the Department to overrule case law demonstrates its acquiesence in our prior holdings that a settlor's intent governs the nature of a beneficiary's interest in a trust. *See State v. Gefroh,* 458 N.W.2d 479 (N.D. 1990); *Kline v. Landeis,* 147 N.W.2d 897 (N.D.1967);. *Accord Matter of Leona Carlisle Trust,* 498 N.W.2d 260 (Minn.App.1993); *Trust Co. of Okla. v. State ex rel. Dept. of Human Services,* 825 P.2d 1295 (Okla.1991), *cert. denied* —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992).

We have found no other state which has established, absent an explicit legislative directive, an administrative regulation deeming available to an applicant the assets of a discretionary trust. The Department argues that its regulation is proper and points to Minn.Stat. § 501B.89, to support its position. Enacted in 1992, § 501B.89, makes unenforceable any provision in a trust which attempts to make assets or income unavailable to a beneficiary if the beneficiary applies for or is determined eligible for public assistance or a public health care program. Actually, the Department makes our point for us. By enacting § 501B.89, the Minnesota legislature spoke directly to the availability of the trust at issue. In so doing, the Minnesota legislature explicitly authorized its Department to overrule a settlor's intent and interpret a trust instrument without giving credence to those particular provisions which the statute renders unenforceable.

In addition, we note that subdivision (2) of § 501B.89, Minn.Stat., exempts supplemental needs trusts created for the benefit of a disabled person by an individual who has no legal duty to provide the funds for the benefit of the chosen beneficiary. Consequently, the Minnesota statute would not authorize deeming the Hecker trust as Herman's available asset. *Id.*

able is a determination that the asset is actually available." NDAC § 75–02–02.1–25(2).

The federal regulations define available assets similarly. *See* 45 CFR § 233.20(a)(3)(ii)(D).

■ The underlined portion of the Department's regulation also exceeds the scope of its statutory authority to promulgate eligibility standards for medicaid.

Medicaid is a cooperative federal-state program that provides medical assistance to persons who lack sufficient income or resources to provide for their own medically necessary care. 42 U.S.C. § 1396. Herman qualifies for medicaid under provisions for the "medically needy." *See* NDAC § 75–02–02.1–05(3). Coverage of the "medically needy" is optional; however, once a state elects to provide coverage to the medically needy, the financial methodology to be employed in determining eligibility for medical assistance "shall be no more restrictive than the methodology which would be employed under the supplemental security income program in the case of groups consisting of aged, blind, or disabled individuals...." 42 U.S.C. § 1396a(a)(10)(C)(i)(III); 42 CFR § 435.401(c)(2). "A financial methodology is considered to be no more restrictive if, by using the methodology, additional individuals may be eligible for Medicaid and no individuals who are otherwise eligible are by use of that methodology made ineligible for Medicaid." 42 CFR § 435.601(d)(3).

The Department argues that North Dakota participates in the medicaid program as a "§ 209(b)" state which permits it to promulgate more restrictive eligibility methodology. However, while § 209(b) states may elect to provide more restrictive eligibility guidelines for their group of "categorically needy" recipients, 42 U.S.C. § 1396a(f), once a state opts to provide coverage for the medically needy, its financial methodology must be no more restrictive than that of SSI.[4]

No federal regulations address specifically whether trust assets of a discretionary trust, such as the Hecker trust, may be deemed available for determining medicaid eligibility. *See Miller v. Ibarra,* 746 F.Supp. 19 (D.Colo. 1990); *Leona Carlisle Trust,* 498 N.W.2d 260. However, "availability" under the SSI guidelines requires that an applicant have an actual legal ability to obtain the resources.

*See* 20 CFR § 416.1201(a)(1). Further, federal policy militates against permitting states to attribute tangential sources of income or resources to applicants. *Zeoli v. Comm'r of Social Services,* 179 Conn. 83, 425 A.2d 553 (1979); *Himes v. Sullivan,* 779 F.Supp. 258 (W.D.N.Y.1991); *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). Although states may deem certain assets of spouses or parents of minors available to an applicant, federal policy limits such deeming to assets of individuals who have a legal obligation to support the applicant. *Schweiker,* 453 U.S. 34, 101 S.Ct. 2633.

Herman has no legal ability to compel distributions from the Hecker trust because the trustee has absolute discretion over any and all payments to Herman. Consequently, under the federal definition of "available," this trust would not qualify as Herman's available resource. 20 CFR § 416.1201(a)(1). *See* 45 CFR § 233.20(a)(3)(iii). *Accord Zeoli,* 425 A.2d 553; *see also Himes,* 779 F.Supp. 258. Further, Wilhelmina Hecker had no duty to support her son when she created this trust. Before 1971, under North Dakota law, parents were considered "responsible relatives" and were financially liable for services provided by the state to their child, regardless of the child's age. NDCC § 25–09–04 (1967) (amended 1973, presently located at NDCC § 50–06.3–04). However, parents no longer labor under an unending legal duty to financially support their children. Presently, parents of a disabled child are only obligated for that child's financial support until the child reaches the age of eighteen. NDCC § 50–06.3–04.

Absent the Department's regulation, Herman would qualify for medicaid. The regulation is more restrictive than the federally prescribed financial methodology because it renders Herman, who is otherwise qualified for medicaid, ineligible, and, consequently, it is invalid. *See* 42 CFR § 435.601(d)(3).

We conclude that the underlined portion of NDAC § 75–02–02.1–31(3) is void and unenforceable because it impermissibly creates a more restrictive financial methodology for

---

4. For a more thorough discussion of the medicaid program and the impact of § 209(b) status, *see Estate of Krueger v. Richland County Social Services,* 526 N.W.2d 456 (N.D.1994).

computing medicaid eligibility and, without statutory authority, it overrules judicial precedent.

## PUBLIC POLICY

The Department argues that even if NDAC § 75–02–02.1–31 does not apply, the supplemental and special needs provisions in the Hecker trust contravene North Dakota and federal public policy and, therefore, must be disregarded. The Department relies on NDAC § 75–02–02.1–31(7), which says:

> "Trusts may provide that trust benefits are intended only for a beneficiary's 'special needs', and require the trustee to take into consideration the availability of public benefits and resources, including medicaid. Some trusts may provide that the trust is not to be used to supplant or replace public benefits, including medicaid benefits. Some trusts may contain terms which attempt to declare or make the determination of the availability of trust assets for medicaid purposes. If a medicaid-qualifying trust or support trust contains such terms, the amount available to the medicaid applicant or recipient is the amount provided in subsection 2 or 3, assuming, for the purposes of making that determination, that the applicant or recipient is ineligible for medicaid."[5]

■ Interpretation and application of administrative regulations is a question of law, fully reviewable on appeal. *Americana Healthcare Centers—Minot and Fargo v. N.D. Dept. of Human Services*, 510 N.W.2d 592 (N.D.1994). We accord some deference to reasonable agency interpretation of a regulation when that interpretation does not contradict the clear and unambiguous language of the regulation. *Id.*

■ Section 75–02–02.1–31(7), NDAC, on its face, applies only to support trusts and medicaid-qualifying trusts. We have determined that the Hecker trust is a discretionary trust, not subject to Herman's demands for distribution, and subsection (7) does not apply to discretionary trusts. *See id.*

■ Nor is the Hecker trust a Medicaid Qualifying Trust [MQT]. An MQT is a trust established, other than by will, by an individual or an individual's spouse, under which the individual is a beneficiary. NDAC § 75–02–02.1–31(2). Because the trust was created by Herman's mother and not by Herman himself, it does not fall within the definition of an MQT. Thus, the regulation does not render Wilhelmina Hecker's intent unenforceable on public policy grounds.

■ Courts look to constitutional and statutory provisions to find public policy, *see Ressler v. Humane Society of Grand Forks*, 480 N.W.2d 429 (N.D.1992); *Gabriel v. Minnesota Mutual Fire and Casualty Co.*, 506 N.W.2d 73 (N.D.1993), as well as to judicial decisions. *See e.g., Rueckert v. Rueckert*, 499 N.W.2d 863 (N.D.1993). The Department cannot pronounce public policy that contradicts judicial precedent absent explicit legislative direction. *Public Service Com'm*, 160 N.W.2d 534. *See also Moore v. N.D. Workermen's Comp. Bureau*, 374 N.W.2d 71 (N.D.1985) [administrative agencies do not initiate policy but follow the policy created by the law which guides the agency].

■ The Department argues that even if NDAC § 75–02–02.1–31(7) does not invalidate the trust, other public policy grounds do. First, it claims that the purpose of the federal and state medicaid program is to provide assistance to the truly needy and Herman is not truly needy because of the trust's existence. The Department relies on our case law to support its argument that public policy requires recipients of public assistance to exhaust their own resources before shifting the burden of their support to the taxpayers. *See In Interest of McMullen*, 470 N.W.2d 196 (N.D.1991); *Penuel v. Penuel*, 415 N.W.2d 497 (N.D.1987); *Bohac v. Graham*, 424 N.W.2d 144 (N.D.1988). While we agree with the Department's premise, it is wholly consistent with this public policy to treat the assets of the Hecker discretionary

---

5. The amount deemed available under NDAC §§ 75–02–02.1–31(2) and (3) is "the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the [grantor or beneficiary], assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the [grantor or beneficiary]."

trust as unavailable to Herman for purposes of medicaid eligibility.

The cases relied upon by the Department are distinguishable on their facts. *McMullen* was an appeal brought by Joshua McMullen, a minor, whose mother was receiving Aid for Families With Dependent Children [AFDC] benefits. 470 N.W.2d 196. Joshua had received a sizeable money settlement as a result of injuries he sustained in an automobile accident. *Id.* The court order approving the settlement permitted disbursement of the trust proceeds only when Joshua reached the age of majority. *Id.* Joshua, at the request of the Department of Human Services, sought a declaratory judgment that the proceeds of the settlement were not available for his support and thus, could not be considered by the Department in determining his mother's eligibility for AFDC. *Id.* We held that if the trustee were required to disburse the proceeds for Joshua's support, they could properly be considered in determining Joshua's mother's AFDC eligibility. *Id.* In so doing, we acknowledged that the "decisions and the regulations on welfare eligibility" require recipients to use their own *"available* income and resources" first, before receiving public assistance. *Id.* at 201 (emphasis added). However, in contrast to Joshua McMullen, Herman has never had a legal right to the proceeds of the Hecker trust, nor is there any question that he cannot compel distribution of income or principal because the trustee has complete discretion as to those distributions. *See Leona Carlisle Trust,* 498 N.W.2d 260. Thus, neither *McMullen,* nor its underlying public policy, makes the Hecker trust unenforceable.

In *Penuel,* we rejected a father's request to reduce his child support obligation because the government's deep pockets would bear the extra costs of supporting his quadriplegic daughter. 415 N.W.2d 497. Unlike Ms. Hecker, Penuel had a statutory and court-ordered duty to provide support for his minor daughter. Wilhelmina Hecker had no similar obligation to support her adult dis-abled son when she created this trust. She was obligated to provide Herman's support only until he reached eighteen. *See Freyer v. Freyer,* 427 N.W.2d 348 (N.D.1988) [holding that parental duty to support generally terminates at age of majority]; NDCC § 14–09–08; NDAC § 75–02–02.1–25 [allowing consideration of the financial ability of the parent of a disabled child only until the child reaches eighteen years of age for purposes of determining medicaid eligibility]. Our state's public policy places the burden on the State to support those children once they reach adulthood. *Accord Lang v. Commonwealth, Dept. of Public Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987).

Finally, in *Bohac,* the trust at issue was a support trust which gave the beneficiary the right to compel distributions for his support. 424 N.W.2d 144. Herman enjoys no similar right under his mother's trust. A beneficiary has no legal interest in a discretionary trust, nor does he have the right under the terms of the trust instrument to compel payments. Thus, Herman's interest in the trust does not permit him to actually access the trust funds, unlike Bohac's interest in the support trust, and, consequently, the funds may not be used for his support.

Second, while we accept the Department's position that medicaid should be a benefit of last resort, *see* NDAC § 75–02–02.1–09 and NDCC §§ 50–24.1–02(2), 50–24.1–02.1 [requiring medical assistance applicants to assign and cooperate in pursuit of any claims of the applicant against a responsible third party], its reliance on *Commonwealth Bank and Trust Co. v. Commonwealth, Dept. of Pub. Welfare,* 128 Pa.Cmwlth. 528, 563 A.2d 1299 (1989) to support its position is misplaced. In *Commonwealth Bank,* the trust instrument contained language which required the trustee to provide for the beneficiary's support, in the trustee's discretion.[6] *Id.* The court interpreted the trust language as limiting the trustee's discretion and giving the beneficiary a right to compel distributions from the trust corpus for necessary support and maintenance. *Id.* To the contrary, the

---

6. This type of hybrid trust is generally known as a discretionary-support trust. *See Bohac v. Graham,* 424 N.W.2d 144, 146 n. 3 (N.D.1988).

language of the Hecker trust explicitly states the settlor's intent that Herman's principal support be provided by available public assistance, not by the trust. Another important distinction is that the settlor in *Commonwealth Bank* had a statutory duty to support the beneficiary of the trust while Herman's mother had no similar legal duty to support him. *Id.* We believe the absence of a settlor's duty to support the beneficiary is a key distinction and necessarily militates against an inference that the settlor intended to provide for Herman's support.

Herman's situation is more akin to a parallel line of Pennsylvania cases holding that a discretionary trust is not an available asset for medical assistance eligibility. *See Lang v. Commonwealth, Dept. of Public Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987). In *Lang,* the applicant was mentally disabled and institutionalized. *Id.* The Pennsylvania court characterized the assets of the discretionary trust of which the applicant was a beneficiary as unavailable to the beneficiary because the beneficiary could not compel payments for support. *Id.* Also important in *Lang,* Pennsylvania had a statute, similar to our own, that relieved parents and other relatives from financial responsibility for disabled persons over the age of eighteen. *Id.*

Third, the Department argues that persons with substantial assets would prefer supporting their relatives incapable of self-support rather than forcing them to rely on public assistance. That may be true for some, but obviously, not all. Indeed, many jurisdictions reject that proposition outright on the ground that the notion of public assistance as charity is anachronistic. *See, e.g., Estate of Escher,* 94 Misc.2d 952, 407 N.Y.S.2d 106 (Sur.Ct.1978); *Town of Randolph v. Roberts,* 346 Mass. 578, 195 N.E.2d 72 (1964); *Lang,* 528 A.2d 1335.

As our last word on the subject, we adopt the reasoning of the Wisconsin Supreme Court which we believe is sound, sensible and just:

> "We know of no public policy to prohibit a person who is not liable for the support of a charity patient in a public institution to give to the patient extra comforts or luxuries or, at need, necessities which the

institution does not furnish nor do we find a public policy to seize such gifts before the patient has received them." *In re Wright's Will,* 12 Wis.2d 375, 107 N.W.2d 146, 149 (1961).

## CONCLUSION

We conclude that the assets of this discretionary trust are not "available" for purposes of determining Herman's medicaid eligibility and the Department, absent legislative authority, cannot include them in evaluating Herman's available assets. To hold differently would place otherwise qualified applicants for medicaid in an untenable position, forcing the settlor to either deplete the corpus of the trust to below $3,000.00 or to leave the applicant stranded—unable to compel payments under the trust instrument and unable to qualify for public assistance. *Leona Carlisle Trust,* 498 N.W.2d 260; *Trust Co. of Okla.,* 825 P.2d 1295, *cert. denied* —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224. Such a result is not required by our law, would nullify the settlor's intent, and would run contrary to our public policy. Consequently, we reverse and remand the district court judgment with instructions to remand to the Department for a redetermination of Herman's eligibility for medicaid benefits without considering the value of the corpus as an asset.

NEUMANN and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

In a dissent in *Nielsen v. Cass County Social Services Bd.,* 395 N.W.2d 157, 162 (N.D.1986), I stated that "I am not yet willing to concede that our society, at least in North Dakota, is at a place where we should assume that decedents would cast their relatives on the welfare roles to reserve their estate for other family members." The majority, relying on cases from other jurisdictions, takes a big step in reforming what I believe to be the North Dakota ethos.

Relying on *Bohac v. Graham,* 424 N.W.2d 144 (N.D.1988), the majority holds the administrative regulation which defines eligibility for medical assistance benefits is void

because it "supersedes our case law holding that the settlor's intent determines whether a trust is a support or a discretionary trust." But we did not decide the issue of whether the department policy was valid in *Bohac.* Rather, the only issue was whether the trust was a discretionary trust or a support trust. I agree with the majority that the trust in this case is a discretionary trust and that this particular trustor intended to have the taxpayers pay for the basic care for her developmentally disabled son, notwithstanding assets she left for his care. I do not agree that the Department has superseded our case law by its regulation. It is given specific authority by section 54–24.1–02(3), NDCC, to enact rules and regulations for eligibility for medical assistance for needy persons. The issue of what the trustor intended, which we decided in *Bohac,* is a different issue than that of whether the intent of the trustor makes the beneficiary eligible or ineligible for medical assistance for the needy under the Department regulations. A trustor may have an intent to create a trust contrary to law. *Bohac* did not decide that the trust, although contrary to law, would be valid because of the trustor's intent.

I dissent consistent with the reasons set forth in my dissent in *Nielsen v. Cass County Social Services Bd., supra.*

SANDSTROM, J., concur.

## ON PETITION FOR REHEARING.

February 8, 1995.

LEVINE, Justice.

On petition for rehearing, the North Dakota Department of Human Services, relying on *Mowbray v. Kozlowski,* 914 F.2d 593 (4th Cir.1990), argues that North Dakota, as a § 209(b) state, may use eligibility criteria pertaining to "medically needy" applicants for medicaid benefits which are more restrictive than those of the Supplemental Security Income (SSI) program and that the underlined portion of NDAC § 75–02–02.1–31(3) is a permissible, more restrictive eligibility requirement. The Department's argument is inconsistent with the position it took in *Estate of Krueger v. Richland County Social Services,* Civil No. 940128, 526 N.W.2d 456 (N.D.1994), in which the Department argued

that its eligibility criteria for "medically needy" medicaid applicants could not be more restrictive than the eligibility requirements under the federal SSI standards. Nor does the Department demonstrate how its regulation would have been permissible under its regulations in effect on January 1, 1972. *See* 42 U.S.C. § 1396a(f).

In any event, we need not decide that issue because North Dakota's § 209(b) status does not rescue the underlined portion of the Department's regulation from invalidation. The federal regulations governing state participation in the medicaid program require that states consider only those assets of an applicant which are actually available to the applicant. 42 U.S.C. § 1396a(a)(17)(B); *Himes v. Shalala,* 999 F.2d 684 (2d Cir.1993). In order for an asset to be considered an actually available resource, an applicant must have a legal ability to obtain it. *See* NDAC § 75–02–02.1–25(2). *Accord Buckner v. Maher,* 424 F.Supp. 366 (D.Conn.1976); *Zeoli v. Comm'r of Soc. Services,* 179 Conn. 83, 425 A.2d 553 (1979). A state's § 209(b) status does not insulate it from complying with the federal requirement that assets be actually available to an applicant. *Dokos v. Miller,* 517 F.Supp. 1039 (N.D.Ill.1981). Because the Department's regulation treats the assets of a discretionary trust as actually available to a beneficiary-applicant, even though the applicant has no legal right to access those resources, it violates the federal "availability" principle and is invalid. *Id.*

Full resolution of the effect of North Dakota's § 209(b) status on the validity of the Department's medicaid eligibility criteria can await another day when the answer will directly affect the outcome of the parties' dispute.

Petition denied.

NEUMANN and MESCHKE, JJ., concur.

VANDE WALLE, C.J., and SANDSTROM, J.: We adhere to our previous dissent.